No. 12656

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

_____

IN THE MATTER OF DECLARING ALLEN JEAN
OLSON and LEA CYNTHIA OLSON,
Dependent and Neglected Children

_____

Appeal from:   District Court of the Eleventh Judicial District,
               Honorable Robert Sykes, Judge presiding

Counsel of Record:

    For Appellant:

        Joseph F. Daley argued, Kalispell, Montana

    For Respondent:

        H. James Oleson, County Attorney, argued, Kalispell,
        Montana
        Thomas Mahan argued, Helena, Montana

_____

Submitted:  May 21, 1974

Decided: JUL 16 1974

Filed: JUL 16 1974

_Thomas J. Kearney_
                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by a natural mother from an order granting permanent custody of her two minor children to the Flathead County Welfare Division.

On January 6, 1971, following the filing of a petition alleging that a three year old boy and his two year old sister were dependent and neglected, the district court after hearing testimony ordered that the children be taken from their father permanently and from the mother on a temporary basis until June 1, to which time the matter was continued. That date, June 1, was continued until August 25, 1971. At that time testimony was taken and the court returned temporary custody of the children to their mother, retaining legal custody in the Flathead County Welfare Department for one year thereafter.

The mother went to Idaho with her children.

On June 5, 1973, the Flathead County Welfare Division again petitioned the court for permanent custody. A hearing was had on June 26, 1973. The court granted the county's petition for permanent custody with full rights to arrange for adoption of the children. It is from this order the mother appeals.

The district court found the mother had abandoned and neglected the children to such an extent as to justify temporary custody in the welfare department of Flathead County in 1971; then just two and one-half years later, after additional hearings, permanently took the children from their mother.

The issues on appeal are whether the two children are "neglected" within the meaning of section 10-501, R.C.M. 1947; and in that connection whether the trial court abused its discretion.

No purpose would be served by an extended discussion of the evidence before the court. Depositions of baby sitters and members of their families in Idaho were considered. Also, the staff director of the Department of Environmental Community Services from Bonners Ferry, Idaho testified. The mother testified.

The entire thrust of the testimony, including that of the mother, was that the children were mentally retarded and had suffered from environmental deprivation. The lack of parental love and care was such that, as a doctor testified, the children are "retarded as if they had closed off the blood supply to the brain".

Section 10-501, R.C.M. 1947, provides:

> "For the purpose of this act, the words 'dependent child' or 'neglected child' shall mean any child of the age of seventeen (17) years, or under that age, who is dependent upon the public for support, and who is destitute, homeless, or dependent, or who has no proper parental care or guardianship, or who habitually begs or receives alms, or who is found living in any house of ill-fame, or in any house of prostitution, or whose home, by reason of neglect, cruelty, or depravity on the part of its parents, guardian, or other person in whose care it may be, is an unfit place for such child, or whose environment is such as to warrant the state, in the interest of the child, to assume its guardianship or support."

This Court in In re Cantrell, 159 Mont. 66, 71, 495 P.2d 179, held:

> "However, the 'fact' of neglect, that of abandonment of a helpless infant, occurred off the reservation and continued for over a year off the reservation. The mother's only effort, to all practical purposes, was to remain in the sanctuary of the reservation, oblivious to the needs of her child * * *.
>
> "The district court ruled that it had jurisdiction because the child was physically in the county and off the reservation when the petition was filed. That is the sole issue here.
>
> "Section 10-516, R.C.M. 1947, states in part:
>
> "'This Act shall be liberally construed, to the end that its purposes may be carried out, to wit: That proper guardianship may be provided for in order that the child may be educated and cared for * * *.'"

Cantrell was a 1972 decision by this Court concerning abandonment. The facts are not identical as those in the instant case since it involved an Indian child and an Indian mother, but it was a case of abandonment and a case of what is for the best interests of the child and what is proper guardianship.

In In re Bad Yellow Hair, _____Mont._____,509 P.2d 9, 12, 30 St. Rep. 446, this Court stated:

- 3 -

> "These same facts and their resulting effects on
> the four children also support the district court's
> order awarding permanent custody with the right of
> adoption to the welfare department. The children's
> best interest and welfare, not that of the natural
> mother is the paramount consideration [citing cases].
> We are mindful that ordinarily a child's interests
> and welfare will best be served by retaining custody
> in the natural parents. However, the circumstances
> of the individual case may require a different result."

In Bonser v. County of Cascade, ____Mont.____, 507 P.2d 1064, 1068, 30 St. Rep. 358, 364, the Court after considering the evidence, stated:

> "Appellant has not urged nor argued the merits, but
> we have studied the transcript and find the best
> interests of the children, in view of the evidence
> presented at the hearing, show that the district court
> judge's order was proper."

Here, the mother apparently had three strikes against her to start with. She only had part of the ninth grade when she dropped out of school. She married at a very young age to a man more than 25 years her senior. This man turned out to be a hopeless drunkard who deserted his family. She had no training or means of supporting herself or her children and no knowledge of how to raise the children. She apparently ignored them to such an extent that they did not develop emotionally and as a normal human being does between the ages of eight months and three years, resulting in mental retardation in the children. The mother herself needs help, but refuses to admit it even after two and one-half years before the courts and counseling by the Welfare Department. Everyone tried to help her, including the County Welfare Department, the County Attorney, the District Judge and the doctor. She had help and counseling of trained social workers, her children were straightened out in foster homes and with baby-sitters, but finally the court ruled that time had run out and it would not be to the children's best interests to allow the mother to continue to raise them.

There is ample evidence to warrant the court in removing these children from their mother and the district court followed the dictates of the Montana statute. It may be that it would be to the best interests of the mother for her to retain these children, but certainly, based upon the evidence presented, it would not be in the best interests of the children. This Court has repeatedly

pointed out---the primary consideration is the best interests of the children.

We hold that under section 10-501, R.C.M. 1947, where the mother's actions and inactions are such that the children have become mentally retarded due to emotional deprivation and abnormal environmental stimulation, as the record here fairly shows, the language of the section permits and requires the state to assume the guardianship and support.

The order appealed from is affirmed.

_____
Justice

We Concur:

_____

_____

_____
Justices.