No. 13247

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

IN THE MATTER OF DECLARING
GEORGE ERNEST BESSETTE, JR.,
and JEAN PAUL BESSETTE, Youths
in Need of Care.

---

Appeal from:  District Court of the Eleventh Judicial District,
              Honorable Robert Sykes, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert J. Campbell argued, Missoula, Montana

    For Respondent:

        Patrick M. Springer, County Attorney, Kalispell,
          Montana
        Randy Schwickert argued, Deputy County Attorney,
          Kalispell, Montana
        Thomas H. Mahan argued, Helena, Montana

---

                              Submitted:  June 4, 1976

                                Decided:  JUN 3 0 1976

Filed:  JUN 3 0 1976

*Thomas J. Kearney*
                                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by the mother of two minor children from an order of the district court, Flathead County, the Hon. Robert C. Sykes presiding, declaring the children to be abused and neglected and awarding permanent custody to the State Department of Social and Rehabilitation Services with the right to grant adoption.

On January 7, 1975, George Ernest Bessette, Jr., age 3 and Jean Paul Bessette, age 2, the minor sons of Lynn Marie Bessette were voluntarily placed in the custody of the Flathead County Department of Public Welfare. Prior to this time, the two children were in their mother's care. Subsequently on February 5, 1975, the children were returned to their mother. On May 28, 1975, the children were again placed in foster care by the Flathead County Welfare Department with the Department of Social and Rehabilitation Services petitioning the district court on May 30, 1975, to grant temporary custody of the children. The district court awarded temporary custody to the Department on July 10, 1975, with a hearing set for September 9, 1975.

On September 2, 1975, the Department filed a petition for permanent custody with the right to grant adoption. As a result of this petition, the September 9, 1975 hearing was vacated and a new hearing set for October 30, 1975. Service was made on the mother, but the divorced father, George Bessette,Sr., had left the state his whereabouts unknown, and was therefore served by publication. He did not appear to contest the petition.

At the September 9, 1975, hearing a written report to the court by social worker Gloria Brinkman, dated August 13, 1975, was entered into evidence and stipulated by the mother's attorney as accurately reflecting the events to August 13, 1975. That report revealed the following pertinent facts: At the time the two minor children were voluntarily placed in custody, they were dirty, ill-clothed, and medically observed to be suffering from malnutrition and environmental retardation. Upon being returned to their mother's care, the Welfare Department made various attempts to help the mother improve the children's living conditions. However a citizen complaint subsequently brought the children to the Welfare Department's attention again. This time one of the boys was found to be suffering from two black eyes, numerous scratches near the eyes, a lump on the back of his head, and bruises on his back. Dr. Wilder who examined both boys at this time, concluded one boy had been abused and both had been neglected.

Upon examining the evidence and hearing testimony from the mother, her father, a former employer of the mother, and Gloria Brinkman, the social worker assigned to this particular case, the district court entered its order granting the petition for permanent custody and authority to assent to adoption.

From that order the mother appeals.

The sole issue presented for review is whether there was sufficient evidence for the district court to remove the children from their mother under the provisions of section 10-1301, R.C.M. 1947.

Section 10-1301 defines youth in need of care:

"(2) 'Abuse' or 'neglect' means:

"(a) The commission or omission of any act or acts which materially affect the normal physical or emotional development of a youth, any excessive physical injury, sexual assault or failure to thrive, taking into account the age and medical history of the youth, shall be presumptive of 'material effect' and nonaccidental; or

"(b)  The commission or omission of any act or acts by any person in the status of parent, guardian or custodian who thereby and by reason of physical or mental incapacity or other cause, refuses, or with state and private aid and assistance is unable to discharge the duties and responsibilities for proper and necessary subsistence, education, medical or other care necessary for his physical, moral, and emotional well-being.

"(3)  'Dependent youth' means a youth who is abandoned, dependent upon the public for support, and who is destitute or is without parents or guardian or under the care and supervision of a suitable adult or who has no proper guidance to provide for his necessary physical, moral and emotional well-being.  A child may be considered dependent and legal custody transferred to a licensed agency if the parent or parents voluntarily relinquish custody of said child.

"(4)  'Youth in need of care' means a youth who is dependent or is suffering from abuse or neglect within the meaning of this act."

The mother apparently concedes she had abused and neglected her children but contends her attitude toward them has changed dramatically for the better.  In support of this contention, she relies on the August 13 report to the court by social worker Gloria Brinkman which was admitted into evidence.  In that report Gloria Brinkman stated:

"Mrs. Bessette appears to have improved her own personal hygiene habits since the boys were placed.  She has kept her job as a baby-sitter.  Visits with the boys have been regular, and she has been increasingly cooperative regarding keeping appointments with me * * *."

Examination of the record reveals that while the mother's contention may have been true as of the date of the report, subsequent events point to a different conclusion.  On August 14, 1975, one day after Gloria Brinkman's report, the mother was provided visitation privileges with one of her sons.  When the social worker, Gloria Brinkman, picked the boy up a mere six hours later, in Mrs. Brinkman's words, he was "* * * absolutely filthy * * * sticky * * * and * * * smelled like he had filled his diaper * ** and * * * had lost one shoe * * *."

- 4 -

In addition, evidence at the hearing indicated subsequent to the August report, appellant mother worked for a carnival, traveling from town to town and later worked in Las Vegas "as an errandgirl at $300.00 a week for a wealthy, elderly lady.", thus seeing little of her children or the counseling which the Welfare Department could have provided. Finally, the summarized thoughts of Gloria Brinkman, the social worker in charge of the case, are of special significance. When asked on direct examination whether she thought appellant's attitude toward her children had improved, this exchange took place:

"A. No, to me the things that have occurred since August have only supported my original decision.

"Q. What events are you speaking of? A. I am talking of infrequency of visits, the way Johnny looked after that visit, how hungry the two boys were after that last visit, Lynn's pattern of this instability that seems to have continued, her unwillingness to work with us and we seem to have no way to help her that I have been able to find.

"Q. So you see nothing that has changed that would tend to want you to change your recommendation? A. That is correct."

The record clearly reflects an established and continuing pattern of abuse and neglect. This Court has said on numerous occasions that the primary consideration in awarding custody is the best interests and welfare of the children. In the Matter of Fisher, Youth in Need of Care v. Gloria Fisher, _____Mont._____, 545 P.2d 654, 33 St.Rep. 183; In the Matter of Henderson, _____Mont. _____, 542 P.2d 1204, 32 St.Rep. 1154; In the Matter of Olson, Dependent, 164 Mont. 431, 524 P.2d 779. The importance of placing the determination of the best interests of the child in the informed discretion of the district court was noted in In the Matter of Henderson, wherein we quoted with approval from In the Matter of

Adoption of Biery, 164 Mont. 353, 356, 522 P.2d 1377:

> "What is, or what is not in the best interests of
> the child depends upon the facts and circumstances
> of each case.  The responsibility of deciding custody
> is a delicate one which is lodged with the district
> court.  The judge hearing oral testimony in such a
> controversy has a superior advantage in determining the
> same, and his decision ought not to be disturbed except
> upon a clear showing of abuse of discretion."

Review of the facts and circumstances of this case leads to the conclusion that substantial credible evidence existed to support the decision of the district court.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 6 -