No. 13704

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

IN THE MATTER OF RICKY MOYER a/k/a
STEWART MOYER, KENNY MOYER, STEVE MOYER
AND SHANNON MOYER, Youths in Need of Care.

---

Appeal from: District Court of the Thirteenth Judicial
District
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Vernard C. Anderson, Jr. argued, Billings, Montana

For Respondent:

Harold F. Hanser, County Attorney, Billings
Montana
Charles Bradley, argued, Deputy County Attorney,
Billings, Montana
Richard Webber argued, Helena, Montana

---

Submitted:  June 22, 1977

Decided: JUL 26 1977

Filed: JUL 26 1977

<u>Thomas J. Kearney</u>
Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal from an order of the district court, Yellowstone County, awarding permanent custody of appellant's four minor children to the Child Welfare Services Division, Department of Public Welfare, State of Montana.

Appellant, Ethel Rebecca Moyer, is the mother of Ricky Moyer, also known as Ricky Stewart, Kenny, Steve and Shannon Moyer. On December 31, 1975, the Yellowstone county attorney filed in the district court a petition for temporary investigative authority and protective services on behalf of the Moyer children, pursuant to section 10-1311, R.C.M. 1947. The county attorney supported the petition with an affidavit and with a report to the court which had been prepared by the Yellowstone County Department of Public Welfare, and which was submitted to the district court in accordance with section 10-1311. The report to the court listed the police records of Ricky and Kenny Moyer, complaints from their school authorities regarding emotional problems of Ricky, Kenny, and Steve, and allegations by the welfare department that appellant failed to provide adequate discipline and supervision of the children. The district court, on January 5, 1976, issued an order for temporary custody of the Moyer children, requiring appellant to cooperate with an investigation into the youths' home situation and giving temporary custody of the youths during the pendency of the action to the Yellowstone County Department of Welfare.

On March 11, 1976, the Yellowstone county attorney filed a petition pursuant to section 10-1310(10)(d), R.C.M. 1947, requesting the district court to grant permanent legal custody of the Moyer children to the Child Welfare Services Division. The county attorney in his petition alleged that the Moyer children were neglected and abused youths in need of care, within the

meaning of section 10-1301, R.C.M. 1947, and set forth certain general assertions in support of his allegations.

Because the whereabouts of the putative fathers of the Moyer children were unknown, the district court authorized service of process by publication pursuant to Rule 4(d), M.R. Civ.P. None of the putative fathers appeared at the April 16, 1976 custody hearing and none appeals the decision of the district court.

At the nonjury hearing to determine permanent legal custody of the children, eight witnesses testified for respondent Child Welfare Services Division and six witnesses testified for appellant Ethel Rebecca Moyer. Based on the testimony at the hearing, the district judge on May 13, 1976 issued findings of fact and conclusions of law. The court concluded that the Moyer children were youths in need of care within the meaning of section 10-1301, R.C.M. 1947, and ordered that their permanent custody, including the right to consent to their adoption, be awarded to the Child Welfare Services Division.

Appellant raises the following issues in her appeal:

1. Is it legally impermissible for a county attorney to file a prehearing "report to the court" in support of a section 10-1310, R.C.M. 1947, petition for permanent legal custody of dependant and neglected children?

2. Was the evidence presented at the custody hearing sufficient to support the judge's decision to award permanent custody of the Moyer children to the Child Welfare Services Division?

Appellant contends that the county attorney's report to the court was inadmissible in a permanent custody action under section 10-1310, R.C.M. 1947. Section 10-1310 neither requires nor prohibits the filing of a prehearing report to the court.

The district court record in this case, however, contains only one report to the court, a report which the county attorney filed in support of his December 31, 1975 petition for temporary investigative authority and protective services. Section 10-1311(3), R.C.M. 1947 specifically authorizes the filing of a welfare department report in support of a temporary investigative authority and protective services petition. We need not, therefore, decide whether it would have been proper for a county attorney to file a prehearing report in support of a section 10-1310 petition for permanent custody.

Appellant next contends that the evidence presented at the custody hearing does not support the district judge's finding that the Moyer children were dependent and neglected within the meaning of 10-1301, R.C.M. 1947, or his decision to award permanent legal custody to the Child Welfare Services Division. Appellant claims that the aforementioned report to the court contained hearsay statements which were prejudicial to appellant and which strongly influenced the judge in his custody decision. It is true that a judge violates due process requirements if he bases his child custody order on statements in a welfare department report without requiring the authors of the report to testify at a hearing and be subject to cross-examination. In re Appeal in Maricopa Cty., Juv. Action No. J-75482, 111 Ariz 588, 536 P.2d 197; C.B. v. People in Interest of J.T.B., 30 Colo.App. 269, 493 P.2d 691; In re Baum, 8 Wash.App. 337, 506 P.2d 323. In a civil case, such as the one at bar, which is tried before the court without a jury, there is a presumption that the trial judge has disregarded all inadmissible evidence in reaching his decision. O'Sullivan v. Simpson, 123 Mont. 314, 212 P.2d 435; Healy v. First Nat. Bank, 108 Mont. 180, 89 P.2d 555, There is nothing in the record and appellant has cited nothing to this Court to rebut this presumption or show that the district judge

- 4 -

based his decision on any evidence other than that presented by the witnesses who testified at the permanent custody hearing. We must, therefore, examine the record to determine if there is sufficient evidence to support the district judge's permanent custody order.

Appellant claims that absent the report to the court, there was insufficient evidence to sustain the district court's findings. Appellant asserts that the district court's custody judgment must be reversed in light of this court's recent decision in In re Declaring Swan Children Youths in Need of Care, ____Mont.____, ____P.2d____, 34 St.Rep. 390 (1977). The facts which demanded reversal in Swan are not present in this case.

In Swan we held that hearsay evidence was inadmissible in a custody hearing. We reversed the decision of the district court in Swan because the record established that the judge's decision to award custody of appellant's three minor children to the Montana Department of Social and Rehabilitative Services (SRS) was based mainly on hearsay evidence. " * * *the record is replete with oral and written hearsay evidence, admitted over proper objection." Swan, 34 St.Rep. 392. The only evidence which SRS submitted in Swan was written reports prepared by SRS and other state agencies, a written medical report, and the testimony of two SRS employees. The reports contained written hearsay and the testimony oral hearsay, none of which fell under the exceptions to the hearsay rule. Without the inadmissible hearsay evidence, there was insufficient evidence in Swan to sustain the district judge's permanent custody order.

The facts in the case at bar are markedly different from the facts in Swan. Whereas in Swan the record indicated that " * * * certain written reports * * * were considered by the court in its decision", (34 St.Rep. 391),there is nothing in the

record in this case to indicate that the district judge considered the welfare department report in his permanent custody decision. While the testimony at the custody hearing in Swan consisted solely of largely hearsay statements of two SRS employees, the district court in the instant case heard testimony from a clinical psychiatrist, a police officer, school nurse, school principal, school attendance officer, teacher and social worker, all of whom had had personal contact with either the Moyer children, the appellant, or both. In addition, the court heard testimony from appellant herself and from friends and neighbors of appellant. The district court in this case had the opportunity to examine the statements and judge the credibility of all the witnesses before making a decision as to custody.

This Court will not reverse the child custody decision of a trial judge in the absence of a clear showing of abuse of discretion. In re Declaring Burgdorf and Berry, Dependent and Neglected Children, ____Mont.____, 551 P.2d 656, 33 St.Rep. 605 (1976); In re Declaring Bessette Children Youths in Need of Care, ____Mont.____, 551 P.2d 653, 33 St.Rep. 600 (1976). The district court must exercise its discretion in child custody cases to further the welfare and best interests of the children. In re Declaring Henderson a Dependent and Neglected Child, 168 Mont. 329, 542 P.2d 1204, 32 St.Rep. 1154; In re Declaring Olson Children Dependent and Neglected Children, 164 Mont. 431, 524 P.2d 779. Did the district court's decision further the children's best interests and satisfy the statutory requirements of Title 10, Chapter 13, R.C.M. 1947?

Section 10-1314(1)(b)(i), R.C.M. 1947 authorizes a district judge to transfer custody of abused or neglected youths to SRS. Section 10-1301(2)(a), R.C.M. 1947 defines abuse or

neglect as the " * * * commission or omission of any act or acts which materially affect the normal physical or emotional development of a youth * * *". The testimony at the custody hearing produced ample evidence to support both the district judge's finding that the children were abused and neglected while in the custody of their mother, and his judgment that it would be in the children's best interests to transfer their legal custody to Child Welfare Services, a division of SRS. A clinical psychologist testified that he had tested the two oldest children and had found them to have learning disabilities and behavior problems which he concluded were caused by inadequate home care and supervision. A police officer listed the numerous times that he had apprehended one of the children on juvenile offenses. The officer also testified that he once had discovered one of the children burning lighter fluid on the living room floor of the family home and was informed by appellant that she had given her son permission to play with the fluid. The school nurse testified that on numerous occasions the children had come to school with serious injuries and that they were often inadequately dressed for the time of year. When the school nurse visited the Moyer home, she noticed that the house had a strong smell of vomit, that there were dog feces on the floor, that the two youngest children were very dirty, and that appellant had a very difficult time controlling or disciplining her children.

Other witnesses testified that the three school aged children often roamed the city streets unsupervised late at night, often came to school hungry and sleepy, and were oft-times unwilling to associate or play with their classmates. In addition, various witnesses testified as to appellant's admissions that she often did not know where her children were,

and that she was unable to discipline them. Finally, a social worker testified appellant had failed to follow the recommendations of public agencies which had worked with her, and that when the children had been temporarily taken from appellant and placed in a receiving home, they had progressed well emotionally.

We do not dispute the assertions of appellant and the neighbors who testified in her behalf that appellant loves her children. It is clear from the record, however, that appellant is unwilling or unable to provide the care necessary for the physical and emotional well-being of her children. The testimony at the custody hearing supports the district judge's finding that the children were abused and neglected youths in need of care within the meaning of section 10-1301, R.C.M. 1947, and his judgment, pursuant to section 10-1314(1)(b)(i), R.C.M. 1947, transferring permanent legal custody of the children to SRS.

The judgment of the district court is affirmed.

                                        _____
                                            Chief Justice

We concur:

_____

_____

_____

_____
               Justices