No. 13719

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

_____

IN THE MATTER OF CURTIS SONSTENG,

Respondent and Appellant.

_____

Appeal from: District Court of the Third Judicial District,
Honorable Robert Boyd, Judge presiding.

Counsel of Record:

For Appellant:

James Dorr Johnson argued, Warm Springs, Montana
Steven Bunch, Helena, Montana

For Respondent:

Mark P. Sullivan argued, Butte, Montana
Nick A. Rotering, Helena, Montana

_____

Submitted: November 28, 1977

Decided:DEC

Filed:

*Thomas J. Kearney* _____ Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The Montana Department of Institutions, by state psychologist Katherine Gallagher, commenced this action in the District Court, Deer Lodge County, pursuant to Section 38-1312, R.C.M. 1947, petitioning for extended detention of respondent at Warm Springs State Hospital. Petitioner sought a declaration that respondent was "seriously mentally ill" and should be committed to a mental health facility for a period not to exceed three months.

Respondent Curtis Sonsteng was first committed to Warm Springs by judicial order in 1951. Although released on convalescent leave in 1959, respondent was recommitted in 1962. Respondent was last committed on February 8, 1964 by an order of the Valley County District Court. He has remained at Warm Springs since 1964. Currently, respondent is 48 years of age.

At some time prior to June 1976, respondent was placed under the care and supervision of Katherine Gallagher, a staff psychologist at Warm Springs and certified "professional person" as defined in section 38-1302, R.C.M. 1947.

Section 38-1312, R.C.M. 1947, requires that any person judged mentally ill prior to the enactment of Title 38, Chapter 13 shall, one year following the effective date of the act, be released unless a petition for an extended detention order is filed.

On June 29, 1976, Gallagher prepared and filed the required petition, together with a written report and evaluation of respondent's mental and physical condition as required by section 38-1306(6), R.C.M. 1947, (now section 38-1306(3) by amendment of 1977).

Upon application of counsel for respondent, the district judge appointed Dr. Ben Peters of Anaconda, Montana, to conduct an independent evaluation of respondent. Respondent was detained during the period of evaluation. On October 4, 1976, Dr. Peters prepared a report concerning respondent.

On December 2, 1976, Dr. Avelina Dimarucot, a Warm Springs psychiatrist, prepared and filed an additional evaluation report on respondent's condition.

At the hearing held December 3, 1976, Gallagher testified respondent was, in her opinion, seriously mentally ill and a danger to himself and others. She concluded that further detention for six months would be in the best interests of the patient. Dr. Dimarucot, in her testimony, classified respondent as "psychotic" and a danger to himself and others. Respondent offered no testimony, professional or otherwise, nor did respondent offer the report of the independent evaluator, Dr. Peters.

By its findings, conclusions and final order dated December 3, 1976, the District Court found that alternatives other than continued commitment were considered and rejected due to the seriousness of respondent's mental illness, although the precise alternatives were not enumerated. The district judge concluded respondent was "seriously mentally ill" and ordered commitment be continued for a period not to exceed six months. Respondent appeals from that order.

The issues raised on this appeal are:

1. Did the District Court err in permitting, over objection, the written report of the professional person concerning the mental and physical condition of the patient to become a part of the record?

2. Did the District Court err in permitting the testimony of respondent's institutional psychologist and psychiatrist, in derogation of the psychologist/patient and physician/patient privileges?

3. Was there sufficient evidence to support the conclusion that respondent was "seriously mentally ill" beyond a reasonable doubt?

Issue 1. Respondent first contends the District Court erred in failing to exclude from all consideration the reports of the professional persons submitted in the instant case pursuant to section 38-1306(6), R.C.M. 1947. On the one hand, respondent maintains such reports must be properly entered into evidence prior to their being considered. Yet, on the other hand, he characterizes the reports as inherently inadmissible hearsay, incapable of admission in any event.

Such reports typically contain brief medical histories compiled from the hospital files of the various patients. Such inclusion, we believe, is the foundation for respondent's argument in this regard. Thus, it is asserted the reports are inadmissible hearsay in that a portion of the material contained in the reports is gleaned from accumulated documents in hospital files consisting of unsworn statements. The resulting inability of respondent to cross-examine the authors of such statements is posited as a denial of due process. This argument misses the mark.

Submission of such reports at some point in an involuntary commitment proceeding is provided for by virtually every state statutory scheme. Illinois provides that hearing pursuant to a petition for involuntary commitment must be commenced by the filing of a certificate of a physician or psychologist. Ill. Rev. Stat., Chap. 91 1/2, §8-3. In New York, admission can be made

upon a medical certification alone, with the burden of petitioning for a hearing on the matter being shifted, for the most part, to the patient. 34A McKinney, New York Mental Hygiene Law §31.27 et.seq..California, considered to be one of the forerunners in the reform of civil commitment procedures, provides, by the 1969 Lanterman-Petris-Short Act, for a professional person's submission to the court of affidavits serving a function similar to the reports submitted in Montana. 73A Cal.Welfare & Institutions Code, §§ 5301 et.seq.

The controlling Montana legislative provision in this regard is section 38-1306(6), R.C.M. 1947. This section provided in pertinent part:

> "* * * the professional person in charge of the patient may petition the court for extension of the detention period. The petition shall be accompanied by a written report and evaluation of the patient's mental and physical condition. The report shall describe any tests and evaluation devices which have been employed in evaluating the patient, the course of treatment which has been undertaken for the patient and the future course of treatment anticipated by the professional person.
> * * *"

In analyzing the propriety of consideration of the report by the district judge, it is significant to consider the role of the report in the context of the Montana involuntary commitment procedure generally. For this purpose, an analogy can be found in the procedure whereby an affidavit in support of a request for leave to file an Information is filed with a District Court by a county attorney in a criminal case. Both the report and affidavit are grounded in and compiled pursuant to information derived from others. The weight and relative veracity attached to such documents is based primarily upon the high measure of professional responsibility traditionally inherent in the offices of the persons submitting the documents to the

court. Their purpose, then, is in furnishing reasonable grounds for initiation of a legal proceeding. The documents are in neither case offered as substantive proof of that sought to be demonstrated in the proceeding. As such, the question of the admissibility of the reports or their alleged hearsay character is in fact a nullity.

Respondent is correct in asserting that involuntary commitment constitutes a deprivation of liberty which a state cannot accomplish without due process of law. O'Connor v. Donaldson, 422 U.S. 563, 580, 95 S.Ct. 2486, 45 L ed 2d 396 (1975); Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 18 L ed 2d 326 (1967). It is well settled that due process entails the right to cross-examination. Specht v. Patterson, supra. We find sufficient protection of a patient's due process rights regarding the limited consideration of the report in the fact that the professional person compiling the report is required to be present in court and subject to cross-examination. Sections 38-1306(6), 38-1306(4), 38-1305(7), R.C.M. 1947.

Respondent attempts to establish a parallel between consideration of the report of the professional person in a commitment hearing and consideration of social welfare service investigative reports in custody cases. Recent decisions of this Court require the authors of such welfare reports to testify at the custody hearing, subject to cross-examination, prior to any consideration of the reports. In re Declaring Swan Children Youths in Need of Care, ____Mont.____, 567 P.2d 898, 34 St.Rep. 390 (1977); In re Moyer, ____Mont.____, 567 P.2d 47, 48, 49, 34 St.Rep. 682 (1977); Ronchetto v. Ronchetto, ____Mont.____, 567 P.2d 456, 34 St.Rep. 797 (1977). However, it is significant to note that in Moyer,

this Court expressly approved the provision of section 10-1311(3), R.C.M. 1947, which specifically authorizes the filing of a welfare department report in support of a petition for temporary custody. Moreover, Moyer is authority for the proposition that a District Court is not in error in receiving a welfare report where the record fails to indicate the court considered the report in making the actual custody determination.

In the instant case, the argument favoring reception of the report is stronger than in Moyer. Here, as in Moyer, the record in no manner suggests the District Court considered the reports filed in determining respondent was seriously mentally ill. Both psychologist Gallagher and psychiatrist Dimarucot testified at the commitment hearing, and were subject to full cross-examination concerning both their professional opinions and the respective basis thereof. Further, submission of the report of a professional person is not merely permitted, but is in fact mandated by the express language of section 38-1306(6), R.C.M. 1947. Respondent's position regarding such reports cannot be sustained.

Issue 2. Respondent argues that a professional person who has treated a given patient cannot be examined as to any information acquired in the course of evaluation and treatment of such patient, under the psychologist/patient and physician/patient privileges set forth at sections 66-3212 and 93-701-4, R.C.M. 1947. The alternative, it is maintained, is to require the professional person to advise the patient of his right to remain silent prior to the commencement of any interaction between them.

The deprivation of liberty entailed by an involuntary commitment has been justified by two distinct exercises of power by the state. The state, by virtue of the common law, retains the authority to act as "'the general guardian of all infants, idiots and lunatics'". Hawaii v. Standard Oil Co., 405 U.S. 251, 257, 92 S.Ct. 885, 31 L ed 2d 184 (1972). Acting as parens patriae the state is vested with both the power and the duty to promote the interests and welfare of its citizens.

As a sovereign, the state also possesses plenary power to make laws and regulations for the protection of public health, safety, welfare and morals, commonly referred to as police power. Jacobson v. Massachusetts, 197 U.S. 11, 24,25, 25 S.Ct. 368, 49 L.Ed. 643 (1905). The power of parens patriae, when exercised in accordance with the requirements of substantive due process, has been held to justify commitment of a person who is shown to have a mental disorder depriving him of the ability to protect his life or health, or rendering him dangerous to himself. In re Ballay, 482 F.2d 648, 658,659 (D.C.Cir.1973). Likewise, the police power justifies commitment of a person whose mental disorder has resulted in injury to others, or poses the imminent threat thereof. Jacobson v. Massachusetts, supra.

As indicated by the definition of "seriously mentally ill" in Montana commitment statutes, a commitment may be predicated on either or both of the above powers, subject to the same strict procedural requirements. Section 38-1302(13), R.C.M. 1947. Here we note that Montana's involuntary commitment statues, effective July 1, 1975, are most progressive in this regard.

It is manifest that the state interests entailed by the two powers necessitate dispensing with the various forms of physician/patient privilege. California maintains an express exception to the privilege in instances where the psychotherapist has cause to believe the patient suffers from a mental or emotional condition rendering him dangerous to himself or to the person or property of another. 29B Cal.Code §1024. The legislative intent in creating the exception to the privilege requirement is contained in the official law revision comment to California's §1024:

> "* * * Although this exception might inhibit the relationship between the patient and his psycho-therapist to a limited extent, it is essential that appropriate action be taken if the psychotherapist becomes convinced during the course of treatment that the patient is a menace to himself or others and the patient refuses to permit the psychotherapist to make the disclosure necessary to prevent the threatened danger."

A broader exception, applicable where the psychotherapist in the course of treatment, determines the patient is in need of hospitalization, has been recommended by the Commissioners on Uniform State Laws. 13 U.L.A. Uniform Rules of Evidence, §503(d)(1).

In Montana, the statutes require the presence of the professional person at the hearing for commitment or extended detention and corequisite availability of such professional person for cross-examination evidence, which manifests a legislative intent to create an exception to the privileged communications rule. Sections 38-1305(7), 38-1306(4), 38-1306(6), R.C.M. 1947. Precedent for such an exception can be found in the Montana Code of Criminal Procedure, which renders admissible statements of an examining psychiatrist on the issue of the mental condition of the accused, whether privileged or not. Section 95-509, R.C.M. 1947.

Indeed, to uphold the assertion of the privilege in commitment proceedings would be to frustrate the state interests involved in the commitment procedure, rendering a patient's true mental condition incapable of proof. The sole persons qualified to render an educated psychological or medical opinion as to the mental condition of a patient and its actual and potential manifestations are those psychologists and psychiatrists who have been engaged in evaluation and treatment of that patient. Neither judges nor administrative personnel are as qualified as psychologists and psychiatrists to render judgments concerning a patient's mental condition. In re Bye, 115 Cal.Rptr. 382, 524 P.2d 854 (1974). We conclude that mental health professionals on the hospital staff qualify as "neutral factfinders." Accordingly, we recognize an exception to the privilege in cases such as the instant one.

Issue 3. Respondent finally challenges the sufficiency of the state's proof of serious mental illness in the instant case.

The state has the burden of proving in an original commitment or extended detention proceeding the following elements:

1. Mental disorder.

2. Resulting self-inflicted injury or injury to others or the imminent threat thereof, or inability to protect life or health.

Sections 38-1305(7), 38-1306(4), 38-1306(6), 38-1302(13), R.C.M. 1947. The standard of proof applicable in such proceedings is proof beyond a reasonable doubt. Section 38-1306(6).

Proof of a mental disorder, defect or deficiency alone is an insufficient basis for involuntary confinement. O'Connor v. Donaldson, supra.

Respondent argues, in essence, that the elements of "dangerousness" and "inability to protect life or health" must be proved by direct evidence of overt acts on the part of the patient.

At the hearing, both professional persons, the sole witnesses, testified respondent had a mental disorder rendering him a danger to himself or others. Witness Gallagher testified respondent suffers from schizophrenia and is seriously mentally ill. Witness Dimarucot concluded respondent is psychotic. Respondent failed to cross-examine the witnesses at any length and offered no testimony in opposition to such conclusions.

While proof of various acts of a patient tending to establish "dangerousness" and "inability to protect life or health" through the testimony of persons related to or acquainted with the patient is ultimately desirable, such is not required, nor even possible in every case.

In cases such as the instant one, the state may establish a prima facie case through the expert conclusions of qualified professional persons. Testimony of such experts is not objectionable merely because it embraces an ultimate issue to be determined by the trier of fact. McGuire v. Nelson, 167 Mont. 188, 199, 536 P.2d 768 (1975).

Here, the state effectively established a prima facie case that respondent was seriously mentally ill. The burden thereupon shifted to respondent to overcome the case against him. Gibbons v. Huntsinger, 105 Mont. 562, 74 P.2d 443 (1937). In the absence of proof to the contrary, the District Court cannot be placed in error for its conclusion.

The order of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

. . . . . . . . . .

Mr. Justice Frank I. Haswell concurring:

I concur in the result.

_____
Justice.

- 12 -