No. 02-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 60

MONTANA DEPARTMENT OF TRANSPORTATION,

      Plaintiff and Respondent,

   v.

GREGORY T. SIMONSON and MONICA A. SIMONSON,
Husband and Wife,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DV 99-322B
The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Peter W. LaPanne, LaPanne Law Firm, Missoula, Montana; M. Gene
McLatchy, Attorney at Law, Missoula, Montana

      For Respondent:

          Timothy W. Reardon & Susan J. Rebeck, Legal Services Unit, Department
of Transportation, Helena, Montana

Submitted on Briefs:  October 24, 2002

Decided:  March 16, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Gregory and Monica Simonson (the Simonsons) appeal from a judgment and final order of condemnation and an order denying a motion for a new trial in the Eleventh Judicial District, Flathead County. We affirm in part and reverse in part.

¶2     We restate the issues on appeal as follows:

¶3     1. Whether the District Court abused its discretion in denying the Simonsons' motion to strike the testimony of the DOT's expert witness.

¶4     2. Whether the District Court abused its discretion in giving certain jury instructions.

¶5     3. Whether the District Court appropriately awarded costs to the DOT.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6     U.S. Highway 93 (the Highway) south of Kalispell, was changed from two lanes to four lanes. The Simonsons own two adjacent tracts of land that fronted the Highway. Their family home and a log furniture business were built upon the tracts. The Simonsons could access the Highway from their property when the Highway was two lanes. In converting the Highway to four lanes, a 1,600 foot frontage road was built in front of the Simonsons' property, to control the access to the Highway. This required the condemnation of .455 acres of the Simonsons' two tracts of land which fronted the Highway. As a result, the Simonsons no longer had direct access to the Highway, but the Highway could still be accessed from each end of the frontage road via median crossovers that allowed the Simonsons, their neighbors, and the public to access the Highway in either the northbound or southbound

2

direction. In addition, turning and deceleration lanes were constructed to allow access to the frontage road.

¶7 Initially, the Montana Department of Transportation (the DOT) attempted to acquire the .455 acres through a written offer to the Simonsons but the Simonsons rejected the offer. The State of Montana, acting by and through the DOT, then brought a complaint against the Simonsons. The DOT alleged that it had broad powers to maintain and protect highway facilities under the police power and that it had the authority to acquire the Simonsons' property "by purchase or any other lawful manner" under the power of eminent domain.

¶8 The Simonsons moved to dismiss the complaint and the DOT moved for preliminary condemnation. The Simonsons then stipulated to the DOT's necessity in condemning the .455 acres and after a preliminary order for condemnation was entered, the Simonsons filed a motion requesting a value commission hearing. Subsequently, a commission was appointed, met, and published a report determining that the DOT should pay the Simonsons $23,415 for the land taken and improvements for both tracts and nothing for depreciation in value to the remainder of the parcels not taken. The Simonsons appealed the Commissioners assessment and a trial to determine just compensation commenced in September of 2001.

¶9 During the trial, experts for both the Simonsons and the DOT testified as to the value of the property condemned and the depreciation of the remaining land due to severance. The Simonsons expert, Bill Gould (Gould), testified that the value of the .455 acres was $27,315. In addition, Gould determined that the Simonsons' remaining property had depreciated, due to severance, in the amount of $47,542 because "in the market, [commercial] property with

3

highway frontage tends to have higher values than property that does not have highway frontage" and due to "the fact that this [property] was set back from the highway by a frontage road, and that a large portion--half the traffic, which was heading the north direction, was considerably farther from the subject, . . . there definitely was damage to the remaining commercial property."

¶10   The DOT's expert, Richard Reilly (Reilly), testified that the value of the .455 acres, plus impact to a sign and a spigot, was $20,550. Reilly further testified that severance damages were not appropriate. When Reilly was questioned about a procedure known as the before and after appraisal, Reilly answered that he made an initial "value judgment" that severing the .455 acres would not result in a depreciation of the Simonson's remaining property because "the acquisition . . . did not impact any buildings" and "did not impact any accesses" and, as such, a before and after appraisal was not necessary.

¶11   After Reilly testified, the Simonsons moved to strike his testimony because Reilly's "appraisal [did] not comply with Montana law requirements with respect to the modified before and after appraisal which is required in a condemnation action." The District Court denied this motion stating that the law does not require a before and after appraisal in every condemnation case. According to the District Court,

> the law says if there is going to be damages for diminution in value of the remainder, then the way to do it is a before and after appraisal.
>
> The [DOT's] expert testified that in his opinion there was no diminution in value of the reminder (sic), and I think he's entitled to state that opinion. If that opinion is not the result of a before and after appraisal, I think that argument goes to the weight of the evidence, not the admissibility.

4

After both parties had rested, the District Court and the parties discussed jury instructions. The parties were unable to agree on some of the instructions so the District Court drew up instructions on its own (Jury Instructions Nos. 9, 10, and 11) concerning impairment of access, traffic diversion, and loss of business.

¶12 After the instructions were given, the jury retired and later awarded the Simonsons $24,764.25 for the value of the .455 acres but did not find any depreciation to the remaining land and so awarded no damages due to severance. Following the jury verdict, the State presented a proposed judgment to the District Court reflecting the verdict and awarding to the DOT costs associated with the appeal. The Simonsons submitted a memo in opposition to the DOT's proposed judgment but the District Court entered a judgment and final order of condemnation which included an award to the DOT for "its costs of the appeal" pursuant to §70-30-304(3), MCA.

¶13 The Simonsons moved for a new trial due to court errors with regard to Jury Instruction Nos. 9, 10, and 11, and the District Court's denial of the Simonsons' motion to strike Reilly's testimony. The motion for a new trial was denied and the Simonsons appeal from the judgment and final order of condemnation and the order denying the motion for a new trial.

**STANDARD OF REVIEW**

¶14   "'[F]or error to be the basis for a new trial, it must be so significant as to materially affect the substantial rights of the complaining party.'" *Houdashelt v. Lutes* (1997), 282 Mont. 435, 442, 938 P.2d 665, 669 (quoting *Zeke's Distributing v. Brown-Forman* (1989), 239 Mont. 272, 278, 779 P.2d 908, 912).  In addition, "[w]e have held that issues concerning the admissibility of evidence are within the discretion of the district court."  *Cottrell v. Burlington Northern R. Co.* (1993), 261 Mont. 296, 301, 863 P.2d 381, 384.  Further, because "[a] district court has broad discretion regarding the instructions it gives or refuses to give to a jury," we will not overturn a district court's ruling with regard to jury instructions absent an abuse of discretion. *Harwood v. Glacier Elec. Co-op., Inc.* (1997), 285 Mont. 481, 487, 949 P.2d 651, 655.

**DISCUSSION**

**ISSUE ONE**

¶15   *Whether the District Court abused its discretion in denying the Simonsons' motion to strike the testimony of the State's expert witness.*

¶16   According to the Simonsons, Reilly's opinion was based upon unsupported conjecture and speculation because he did not appropriately compute just compensation.  The Simonsons maintain that the fair market value of the part taken must be added to the depreciation in fair market value of the remaining parcel to determine just compensation (a before and after appraisal) and because Reilly's opinion did not take into account these latter "severance damages," the District Court abused its discretion when it denied the Simonsons'

motion to strike Reilly's testimony. The State contends that because the Simonsons failed to object to the competency and qualification of Reilly, Reilly was therefore qualified as an expert to state his opinion. The State further maintains that no law prescribes what a proper appraisal is concerning just compensation so Reilly was not required to compute severance damages with a before and after appraisal. However, the State maintains that even though he was not required to do a before and after appraisal, Reilly actually did do a before and after appraisal because he made an initial determination that severing the .455 acres would not damage the remainder of the Simonsons' property.

¶17 It is important to note at the outset that the Simonsons, in relying on § 70-30-301(3)(c)(i), MCA, to support their argument, quote language from the 2003 statute and not the 2000 statute. The appropriate version of the statute is the 2000 version, which was in effect when the value commission hearing was held. Under § 70-30-301(b), MCA (2000), the Commissioners duty was to determine "if the property sought to be appropriated constitutes only a part of a larger parcel, the depreciation in current fair market value which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned." In addition, we have held that "[j]ust compensation for a public taking of private land is to be computed as: fair market value of land taken plus (value of remainder before taking minus value of remainder after taking)." *Meagher Cty. Newlan Creek Water Dist. v. Walter* (1976), 169 Mont. 358, 362-63, 547 P.2d 850, 853 (citing *State, State Highway Commission v. Emery* (1971), 156 Mont. 507, 481 P.2d 686; *Montana State Highway Commission v. Jacobs* (1967), 150 Mont. 322, 435 P.2d 274). *See*

7

*also Great Falls v. Temple Baptist Church* (1993), 260 Mont. 319, 321-22, 859 P.2d 1015, 1017.

¶18    Here, though the Simonsons contend that Reilly did not look at the value of the remainder before and after the taking of the .455 acres, the record reflects that Reilly did consider the possible depreciation to the remainder of the Simonsons' property. Reilly made a "value judgment" that there was no depreciation to the remainder because in looking at photos of the property and what the "property was being used for, how it was being used and the size of it, the acquisition in front did not impact any buildings, did not impact any accesses in there, . . ." Reilly's additional testimony points to other factors he considered.

> [O]ne of the things in the value judgment--we had sales that were on frontage road down at Auction Road that showed for that value of properties, that size. The 5-acre size in there was the same.
>
> Later on we found one out here, the Penrod sale. Penco Power Products up here is in an area where property was selling for $3 a square foot, and they paid $3, and they don't even--there's a frontage road in front of their property. They have no access to the highway.
>
> So what we found in there was that no access to the highway did not diminish the value of the property whatsoever. Exposure to the highway was the big thing. If you can see it from the highway and have a reasonable, very nice access--and this is probably one of the prettiest accesses off of the highway frontage roads I've seen--then people can still get out there, there's no problem.

¶19    While "speculative and conjectural evidence cannot be the basis for a determination of fair market value," Reilly's "value judgment," that there was no depreciation to the remainder of the Simonsons' property, was based upon how the property was being used, the impact on any buildings on the property, no unreasonable impairment of access to the

8

remainder, comparable land sales in the area, and the value of comparable land without highway access. *State v. Smith* (1962), 141 Mont. 302, 308, 377 P.2d 352, 355; *State Highway Commission v. Antonioli* (1965), 145 Mont. 411, 416, 401 P.2d 563, 565-66. Therefore, we hold that the District Court did not abuse its discretion in denying the Simonsons' motion to strike Reilly's testimony.

## ISSUE TWO

¶20 *Whether the District Court abused its discretion in giving certain jury instructions.*

¶21 The Simonsons argue that Jury Instruction Nos. 9, 10, and 11 incorrectly apply the facts and the law. They contend that the instructions imply that they were seeking compensation *per se* for impairment of access, diversion of traffic, and loss of business. However, the Simonsons insist that they did not allege or contend that they should be compensated for impairment of access, diversion of traffic, and loss of business. Rather, the Simonsons showed, through Gould's properly conducted modified before and after appraisal, that because of these aforementioned factors, severance damages occurred when the remaining property's commercial value sustained a permanent market value loss.

¶22 The DOT first contends that the Simonsons did not timely object to the jury instructions. Second, the DOT argues that there was sufficient testimony from which the jury could have concluded that the Simonsons were claiming compensation *per se* and so it was imperative that the District Court instruct the jury that lost income was not to be compensated. Further, the DOT maintains that the Simonsons failed to introduce evidence of proof of monetary damages for diversion of traffic so the District Court correctly

9

anticipated that the jury might indirectly compensate the Simonsons for business loss due to reduced commercial visibility and increased distance from the Highway and took reasonable steps to prevent the jury from compensating the Simonsons for traffic diversion or loss of business.

¶23    While the record reflects that the Simonsons did not object to Jury Instruction Nos. 9, 10, and 11, it also appears that the District Court did not afford them the opportunity to do so prior to giving the instructions.    Trial courts should provide litigants with the opportunity to object to jury instructions.  Rule 51, M.R.Civ.P.  That said, any error here was harmless as the instructions were correct statements of the law.

*Jury Instruction No. 9*

¶24    Compensating a party for loss of access is appropriate only when access has been completely denied or the access provided is unreasonable.  *State v. Keneally* (1963), 142 Mont. 256, 266, 384 P.2d 770, 776.  Jury Instruction No. 9 instructed the jury that:

> [i]n order to award damages for impairment of access to the remaining land of the Defendants, you must determine whether there has been a substantial diminution in access as a direct result of the taking.  "Access" means physical impairment of access, not an impairment of traffic flow.  If you find that there has been a substantial diminution in access as a direct result of the taking, you must determine the resulting damages, if any.

10

There is no indication that the Simonsons have been unreasonably deprived of access to the Highway from their property. Indeed, Gregory Simonson himself testified that after the taking of the .455 acres and the completion of the frontage road, he has northbound and southbound access to the Highway and each access is about a quarter of a mile away to the north and south of his property. While the Simonsons and their customers cannot turn directly off the Highway to the property now, there is still access to the Simonsons' property from the Highway via turning and deceleration lanes to the frontage road. Therefore, we hold that the District Court did not abuse its discretion in giving Jury Instruction No. 9.

*Jury Instruction Nos. 10 and 11*

¶25    In *State v. Peterson* (1958), 134 Mont. 52, 68, 328 P.2d 617, 626, we stated that "[t]he highways primarily are for the benefit of the traveling public, and are only incidentally for the benefit of those who are engaged in business along its way," and that "compensation cannot be had for loss of business by relocation of the highway and diversion of traffic." Jury instruction Nos. 10 and 11 instructed the jury "that the Defendants are not entitled to compensation merely because traffic has been diverted as the result of construction on the highway" and that the jury could "not award any compensation to the Simonsons for any loss of business resulting from the taking." When the District Court denied the Simonsons' motion for a new trial it noted that:

> [the Simonsons] were instructed . . . that they would be required at trial to offer competent evidence of the loss of revenue from their business *and the impact thereof on the fair market value of the remainder of their property*. They failed to offer any such evidence, and the Court concluded and instructed the jury that compensation for loss of business was not allowable. [Emphasis

11

added.]

We agree with the District Court.

¶26    Gregory Simonson's testimony concerned only significant improvements the Simonsons made to the house, improvements on the surrounding property, visibility from the Highway before the frontage road was constructed, the log business's customer base, the storage rental facilities that the Simonsons had constructed on one of the parcels, and loss of direct access to the Highway after the frontage road's construction. While Simonson did testify, that before the highway was constructed the Simonsons had up to five tourist customers a day but after construction, they had "maybe only four [tourist customers] in the last three or four months, five months that [they had] sold actual furniture to." The Simonsons did not present the court with any additional competent evidence of the log business's loss of revenue and the impact thereof on the fair market value of the Simonsons' remainder. Even Gould's testimony failed to establish this essential link. Gould's testimony based the depreciation to the remainder on: the change in the configuration of the Highway; the reduced visibility of the property from the northbound lanes of traffic; and a loss of direct access to the Highway from the property.

¶27    Neither Simonson's, nor Gould's testimony, offered competent evidence of the loss of revenue from the log business "*and the impact thereof on the fair market value of the remainder of their property*." Therefore, we hold that the District Court did not abuse its discretion in giving Jury Instruction Nos. 10 and 11.

¶28    Further, because we have held that the District Court did not abuse its discretion in

12

giving the jury instructions or in denying the Simonsons' motion to strike Reilly's testimony, the District Court did not "materially affect the substantial rights of" the Simonsons and, therefore, the District Court was correct in denying the Simonsons motion for a new trial. *Houdashelt*, 282 Mont. at 442, 938 P.2d at 669.

## ISSUE THREE

¶29 *Whether the District Court appropriately awarded costs to the DOT.*

¶30 The District Court, in its judgment and final order of condemnation filed October 31, 2001, decreed that "the Plaintiff [the DOT] duly served upon the Defendants [the Simonsons] a Written Offer of Judgment in excess of the sum awarded by the jury, . . . and thus, said Defendants are not entitled to costs of this action nor any of their necessary expenses of litigation." The District Court went on to order that "[p]ursuant to Mont. Code Ann. Section 70-30-304(3), Plaintiff is awarded its costs of the appeal." The DOT echoes the District Court's summary arguing that its final offer to the Simonsons was $30,000 and the jury award was $24,764.25, therefore, the DOT is instead entitled to recover its costs.

¶31 This conclusion ignores the specific language of § 70-30-304(3), MCA (1999), entitled, "Appeal to district court from assessment of the commissioners." It reads

> [i]n case the party appealing from the award of the [Value Commission] in any proceeding, . . . shall not succeed in changing to his advantage the amount finally awarded in such proceeding, he shall not recover the costs of such appeal, but all the costs of the appellee upon such appeal shall be taxed against and recovered from the appellant.

The Simonsons appealed the Value Commission's award of $23,415 to the District Court and the jury awarded the Simonsons $24,764.25. The Simonsons final judgment was $1,349.25

greater than the Value Commission's award. Due to the fact that the Simonsons received an award in excess of the Value Commission award, we hold that the District Court erred in awarding costs to the State.

¶32 Affirmed in part, reversed in part, and remanded for entry of an amended judgment consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JIM RICE

Chief Justice Karla M. Gray concurring.

¶33 I join in the Court's opinion. I write separately on Issue 3, however, to respectfully invite the Legislature to revisit several statutes and clarify their intended effect.

¶34 As the Court correctly determines, the District Court's reliance on § 70-30-304(3), MCA, to award costs to the State cannot be supported. That statute clearly relates to the factual circumstances before us in this case--an appeal by the Simonsons from the Value Commission's award in which they finally obtained an amount in excess of the initial award. Nothing in § 70-30-304(3), MCA, supports the District Court's conclusion that the State was entitled to its costs of the Simonsons' appeal.

¶35 Indeed, the State advances no argument at all pursuant to which § 70-30-304(3),

15

MCA, might apply here. Instead, the State argues, in two sentences, that § 70-30-305(2), MCA, which provides that when a condemnee receives an award in excess of the condemnor's final offer, the condemnee (here, the Simonsons) is entitled to an award of necessary expenses of litigation. Even aside from the fact that the District Court did not rely on this statute, nothing in its plain language authorizes an award to the condemnor.

¶36 In any event, I have difficulty reading these two statutes together and harmonizing them. What does the Legislature intend to occur if the circumstances set forth in § 70-30-304(3), MCA (the condemnee succeeds in obtaining a larger amount during the court process) *and* § 70-30-305, MCA (a rejected prejudgment final offer in excess of the Value Commission's determination) *both* take place, but the rejected final offer is more than the amount ultimately awarded? In order words, which party gets costs when?

¶37 My confusion is exacerbated by the Legislature's use of the word "costs" of the appeal in §§ 70-30-304(3) and -305(1), MCA, but the phrase "necessary expenses of litigation" in § 70-30-305(2), MCA and similar wording in § 70-30-306, MCA. Are these intended to be equivalent terms, or are "costs" meant to be the more limited and generally available costs as set forth in §§ 25-10-201 through -206, MCA? It strikes me that clarification by the Legislature, at a time when no case raising those questions is before us, may be helpful to all concerned in the future.

¶38 That said, I join the Court's opinion affirming, reversing and remanding.

/S/ KARLA M. GRAY

16

Justice James C. Nelson specially concurs.

¶39     As a follow up to Chief Justice Gray's concurring opinion, and should the Legislature choose to amend the statutes, it also bears considering that condemnation statutes which purport to award costs, fees, or litigation expenses to the condemnor may face an uphill battle against the Constitution.

¶40     Article II, Section 29, appears to limit an award of litigation expenses to the prevailing  private property owner with no authorization for a reciprocal award if the condemnor prevails.  This section provides:

> **Eminent domain**.  Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner.  In the event of litigation, just compensation shall include necessary expenses of litigation to be awarded by the court *when the private property owner prevails*.  [Emphasis added.]

/S/ JAMES C. NELSON

17