No. 03-010

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 273

ARNE JOHN JACOBSEN,

        Petitioner and Respondent,

    v.

MINNIE LARUE THOMAS,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DR-01-69,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            P. Mars Scott, P. Mars Scott Law Offices, Missoula, Montana

        For Respondent:

            Evonne Smith Wells, Attorney at Law, Missoula, Montana

        For Guardian ad Litem:

            Clare E. Anderson, Anderson & Anderson, PLLP, Missoula, Montana

Submitted on Briefs:  December 11, 2003

Decided:  September 28, 2004

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Minnie LaRue Thomas (LaRue) appeals from an order of the Fourth Judicial District Court, Missoula County, designating Arne Jacobsen (Arne) as the primary residential parent of their two children.  We affirm.

¶2    We address the following issues on appeal:

¶3    1. Did the District Court err by allowing the Guardian ad Litem (Guardian) to submit recommendations which exceeded her authority as initially established by the District Court?

¶4    2. Did the District Court err by not allowing testimony and cross examination of the Guardian at the August 20, 2002, hearing?

¶5    3. Did the District Court err in modifying the stipulated final parenting plan?

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶6    A decree dissolving the marriage of LaRue and Arne was entered May 14, 2001.  It incorporated a stipulated parenting plan for the parties' two children.  Under this plan, both parties were to relocate from Missoula to North Carolina.  The parties were to equally share parenting of the children by following an alternating week schedule.  Numerous proceedings followed over the next year and a half.  Those proceedings will be mentioned here to the extent relevant to the issues presented on appeal.

¶7    In May and July, 2001, Arne made motions to the court to hold LaRue in contempt, alleging she interfered with his time with the children.  After a July, 2001, hearing on Arne's contempt motions, the court *sua sponte* appointed a guardian ad litem.

¶8    On September 10, 2001, the Guardian submitted a report to the court which

2

recommended that Arne be the primary residential parent of the children at the location of his choice and that the parties no longer equally share parenting time with the children. Eight days later, Arne filed a notice of his intent to move to Utah and a proposed revised parenting plan. LaRue then filed objections to the Guardian's report and to Arne's notice of intent to move and proposed new parenting plan. In addition, she also requested the court appoint a child psychologist to perform an investigation and assessment instead of the Guardian.

¶9     The court held hearings on October 29, 30 and November 8, 2001. The court then orally vacated the stipulated parenting plan, named Arne as the primary caregiver, and allowed him to relocate. Arne then moved to Utah with the children. The court also required the Guardian to submit a status report during the Christmas holidays, 2001. The Guardian submitted two more reports. LaRue then entered a subpeona duces tecum for the Guardian. She also made a motion to enforce the original stipulated plan. At a hearing on February 5, 2002, the court orally denied LaRue's motion to enforce the stipulated plan. However, the court allowed LaRue to depose the Guardian which she did at length in March. The Guardian submitted her final report to the court and the parties in early August, 2002. On August 20, 2002, the court held a final hearing. In October of 2002, the court issued findings of fact, conclusions of law and an order which made Arne the primary caregiver. LaRue now appeals. Further facts are discussed below.

## II. STANDARD OF REVIEW

¶10     The standard of review for a district court's findings related to modification of a parenting plan is whether those findings are clearly erroneous. *In re Marriage of Oehlke*,

3

2002 MT 79, ¶ 9, 309 Mont. 254, ¶ 9, 46 P.3d 49, ¶ 9. When findings are not clearly erroneous, we reverse when an abuse of discretion by the district court is clearly demonstrated. *Oehlke*, ¶ 9. Abuse of discretion occurs only when the district court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Robison*, 2002 MT 207, ¶ 15, 311 Mont. 246, ¶ 15, 53 P.3d 1279, ¶ 15. We review questions of law *de novo*. *Robison*, ¶ 15.

## III. DISCUSSION

### ISSUE ONE

¶11 **Did the District Court err by allowing the Guardian to submit recommendations which exceeded her authority as initially established by the District Court?**

¶12 LaRue argues the Guardian was appointed under § 40-4-205, MCA, rather than § 40-4-215, MCA, so the Guardian was not given the authority to conduct an investigation and assessment. She therefore argues the Guardian did not have authority to recommend a change in the stipulated final parenting plan. She asserts the Guardian was not appointed to be an attorney for the children and was not professionally qualified to perform a parenting investigation or assessment as she has no professional training in child development. LaRue also asserts the Guardian did not find someone to act as a guardian ad litem in North Carolina as directed by the court. Asserting the Guardian exceeded her authority by providing a self-initiated investigation, LaRue argues the District Court erred in relying on her recommendations for its decisions.

¶13 Arne counters that the District Court granted broad authority to the Guardian. He argues the Guardian's actions in conducting an investigation, parenting assessment, and the

4

recommendations she submitted to modify the stipulated final parenting plan were within her authority. The Guardian, who submitted a brief on appeal, generally agrees with Arne.

¶14 We hold the District Court did not err in allowing the Guardian to submit her recommendations because the Guardian did not exceed the authority she was granted by the court. The Guardian was appointed at the hearing on the contempt motions. In light of the evidence of the disruptive communications between the parties, the District Court on its own initiative appointed a guardian ad litem "to make sure that the rights of the child (sic) are protected." When Arne's attorney pointed out the parties intended to move to North Carolina, the court stated: "Well, if there are problems here in Montana, there is going to be a guardian ad litem in Montana, and there will probably be one in North Carolina. We will start where there are problems. There're (sic) problems here; a guardian ad litem here." These statements indicate the court intended the Guardian to address current parenting problems in order to protect the children.

¶15 The court then issued a four page order appointing the Guardian. The order appears to use a standardized form for such appointments, modified to include two additional paragraphs emphasized in bold at the beginning to address the move to North Carolina. Under the standardized language regarding the Guardian's duties, the form reads: "The Guardian Ad Litem, in addition to attendance at all proceedings, shall meet with the parties, their counsel, and the child(ren); may contact psychologist/counselors, family members, friends, neighbors, or school personnel, and shall conduct such other investigation as would assist the court in its determination of the best interests of the child(ren)." This language, in addition to other standardized language in the order, indicates that the court intended to

5

give the Guardian broad authority to address the best interests of the children in any way she deemed necessary.

¶16 Although the order does not cite either § 40-4-205, MCA, or § 40-4-215, MCA, it clearly indicates the court intended the Guardian to fulfill both the general statutory duties of a guardian ad litem and to carry out its requests regarding the move to North Carolina. Further, both § 40-4-205, MCA, and § 40-4-215, MCA, give a guardian authority to conduct an investigation. Under § 40-4-205(1) and (2)(a), MCA, a guardian may "conduct investigations" regarding the "child's support, parenting, and parental contact" that the guardian "considers necessary." Under § 40-4-215, MCA, a guardian may conduct an investigation into "parenting arrangements" if someone other than the guardian, including the court, considers it necessary. Therefore, there was no need for the court to order a specific type of investigation under § 40-4-215, MCA, because the guardian already had authority under § 40-4-205(1) and (2)(a), MCA.

¶17 In this case, the Guardian investigated and concluded that the discord was so great between the parties that a 50/50 co-parenting arrangement would not be in the best interests of the children and also that Arne would be able to provide a more predictable, stable routine for the children. Our review of the record indicates that the findings regarding the discord between the parties and regarding the relative stability of Arne's and LaRue's lifestyles, as adopted by the District Court, are not clearly erroneous. Therefore, the Guardian did not exceed her authority when she recommended that the stipulated parenting plan not be followed because her investigation revealed that the stipulation was not in the best interests of the children.

6

¶18     The District Court did not err in accepting the Guardian's report even though she was not an expert in a child development field. We have held there is no general requirement a guardian ad litem be an expert. *In re Custody of Krause*, 2001 MT 37, ¶¶ 11-14, 304 Mont. 202, ¶¶ 11-14, 19 P.3d 811, ¶¶ 11-14. The only mandatory requirement in all cases is that a guardian not have a conflict of interest with the best interests of the children. *Krause*, ¶¶ 11-14. LaRue does not claim the Guardian has interests adverse to the children. Therefore, it was not err for the court to deny LaRue's request for another investigation.

## ISSUE TWO

¶19     **Did the District Court err by not allowing testimony and cross examination of the Guardian at the August 20, 2002, hearing?**

¶20     At the final hearing, the District Court raised the issue of whether there was an ethical conflict for an attorney serving as a guardian ad litem to testify and be subject to cross examination because attorneys are not normally allowed to testify under the Rules of Professional Conduct. The court stated it was raising the issue because it had come up in another case the previous week and the court wanted to avoid error in this case. The court sought input from both counsel and from the Guardian. Both counsel favored testimony based on past experience and the rights of the parties. The Guardian thought the answer depended on whether a guardian was serving more as an attorney or as an investigator for the court regarding the best interests of the children.

¶21     The court then decided that the Guardian would not testify or be subject to cross examination at that hearing in order to err on the side of caution. The court allowed the parties to submit briefing on the issue and allowed LaRue to submit objections to the Guardian's final report as an alternative to cross examination. LaRue and the Guardian

submitted briefs. Arne did not. The District Court did not again address this issue after receiving the briefing and did not make findings or conclusions on the positions stated by LaRue and the Guardian.

¶22 LaRue argues on appeal that the District Court erred by failing to allow the Guardian to testify and be subject to cross examination. She asserts that under § 40-4-205(2)(d), MCA, a guardian is to appear and participate in all proceedings. She also points out that under § 40-4-215, MCA, an investigator is subject to being called to testify and subject to cross examination. LaRue argues there is no exception for the instance where the guardian happens to be an attorney.

¶23 Based on *Krause*, ¶ 19, LaRue asserts she has a constitutional liberty interest in the custody of her children and that it is a denial of due process to simultaneously give a guardian authority to investigate and report to the court and then prevent their testimony based on Rule 3.7, M.R.Prof.Cond. She argues cross examination is also necessary to ensure the best interests of the children are protected. She cites *In re Marriage of Rolfe* (1985), 216 Mont. 39, 699 P.2d 79, and *In re Custody of J.M.D.* (1993), 259 Mont. 468, 857 P.2d 708, for the proposition that an attorney and guardian ad litem cannot have the same role. LaRue also notes the Rules of Professional Conduct are not to be used for one party to gain a tactical advantage. *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 61, 303 Mont. 274, ¶ 61, 16 P.3d 1002, ¶ 61.

¶24 Procedurally, LaRue points out the Guardian in this case was allowed to act as both an attorney and a witness during previous court hearings. LaRue also notes the Guardian's reports and recommendations were submitted into evidence. LaRue argues that even though

8

she was allowed to cross examine the Guardian at a previous hearing, the Guardian had since submitted additional reports with new information that LaRue had not had an opportunity to address. She argues she was also not allowed to question why the Guardian chose not to include information she believed was pertinent. Finally, she notes the Guardian was again allowed to call and examine witnesses at the August 20, 2002, hearing.

¶25 Arne asserts the court appointed the Guardian under § 40-4-205, MCA, and therefore, the cross examination provisions of § 40-4-215, MCA, do not apply. He also argues that because LaRue deposed the Guardian and, because she was allowed to examine or cross examine the Guardian at previous hearings, any error is harmless. Further, Arne points out that at the August 20 hearing, LaRue admitted she did not believe the Guardian had withheld any information. Finally, Arne argues because LaRue was able to obtain all the background documentation from the Guardian during her deposition and was also able to examine or depose all the people the Guardian interviewed, the guardian ad litem disclosure requirements of *Krause*, ¶ 28, have been met. He asserts LaRue was not prejudiced by her inability to examine the Guardian one more time.

¶26 The Guardian points out there are currently no standards or guidelines for guardians ad litem in Montana. She notes there are model guidelines available and that most states have held guardians ad litem are to protect what they believe to be the best interest of the child even if the child client disagrees. Further, the Guardian generally agrees with Arne in that even if she should have been available for cross examination, it was harmless error because LaRue had numerous opportunities to question her, including an extensive deposition.

9

¶27 Arne and the Guardian also argue LaRue did not preserve the due process argument for appeal. However, LaRue's brief to the District Court does preserve this issue.

¶28 The District Court erred in disallowing the testimony and cross examination of the Guardian at the final hearing. However, we hold this error does not require reversal in this case.

¶29 The relevant portions of § 40-4-205, MCA, read:

(1) The court may appoint a guardian ad litem to represent the interests of a minor dependent child with respect to the child's support, parenting, and parental contact. The guardian ad litem may be an attorney. . . .
(2) The guardian ad litem has the following general duties:
    (a) to conduct investigations that the guardian ad litem considers necessary to ascertain the facts related to the child's support, parenting, and parental contact;
    (b) to interview or observe the child who is the subject of the proceeding;
    (c) to make written reports to the court concerning the child's support, parenting, and parental contact;
    (d) to appear and participate in all proceedings to the degree necessary to adequately represent the child and make recommendations to the court concerning the child's support, parenting, and parental contact; and
    (e) to perform other duties as directed by the court.
(3) The guardian ad litem has access to court, medical, psychological, law enforcement, social services, and school records pertaining to the child and the child's siblings and parents or caretakers.

This language was significantly amended in 1995 when "guardian ad litem" was inserted for "attorney," the provision that "the guardian ad litem may be an attorney" was added, and subsections (2) and (3) regarding the duties and access of guardians ad litem were added. However, the Commissioners' Note to § 40-4-205, MCA, indicates the section may still be used to specifically appoint an attorney to provide legal representation. The note says: "This section authorizes the court to appoint an attorney to represent a minor or dependent child . . . ."

10

¶30    In contrast, § 40-4-215, MCA, provides that a guardian ad litem may perform investigations. Subsection (4) states: "Any party to the proceeding may call the investigator and any person the investigator has consulted for cross-examination. A party may not waive the right of cross-examination prior to the hearing." Therefore, the provisions of § 40-4-205, MCA, and § 40-4-215, MCA, set up the conflict recognized by the judge in this case, in that an attorney may be appointed as guardian ad litem and then be required to testify.

¶31    As the parties point out, we have not previously addressed this issue. However, we have held that an attorney appointed by the court to represent a child is not also the guardian ad litem. *Rolfe*, 216 Mont. at 52, 699 P.2d at 86.

¶32    In addition, § 40-4-205, MCA, states the guardian ad litem "may" be an attorney. This indicates lay persons may act as guardians. Therefore, the statute contemplates a guardian ad litem has a unique role to protect the interests of the child. This role is different from the traditional advocacy role played by attorneys. We hold that when a court appoints a guardian ad litem under § 40-4-205, MCA, unless the court specifically indicates it intends the guardian to act as an attorney representing the child, the guardian is not to act as an attorney. Instead, the guardian is required to fulfill the statutory role to objectively aid the court in its decisions regarding the best interests of the child. Section 40-4-215, MCA, applies to § 40-4-205, MCA, in that a guardian ad litem must testify and be subject to cross examination if they give evidence concerning an investigation. Consequently, the District Court erred in failing to require the Guardian to testify in this case.

¶33    In spite of this error, no reversal is required here. Rule 61, M.R.Civ.P., provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by

11

any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

We have held under Rule 61, "for error to be the basis for a new trial, it must be so significant as to materially affect the substantial rights of the complaining party." *Montana Dept. of Transp. v. Simonson*, 2004 MT 60, ¶ 14, 320 Mont. 249, ¶ 14, 87 P.3d 416, ¶ 14.

¶34     As LaRue points out, the right to parent her children is a significant interest. *Krause*, ¶ 19. In addressing testimony involving disputed custody issues, we have held that allowing one parent to testify by telephone was reversible error where the other parent objected because the objecting parent was entitled to a meaningful opportunity to confront the witness and cross-examine effectively so the judge could make credibility determinations. *Bonamarte v. Bonamarte* (1994), 263 Mont. 170, 178, 866 P.2d 1132, 1137. In addition, *In re Moyer* (1977), 173 Mont. 208, 211, 567 P.2d 47, 49, stated: "It is true that a judge violates due process requirements if he bases his child custody order on statements in a welfare department report without requiring the authors of the report to testify at a hearing and be subject to cross-examination." These cases establish that parents be given a meaningful opportunity to examine witnesses in custody cases so the trier of fact can assess factual disputes and weigh credibility.

¶35     In this case, however, the court's error was not so significant as to materially prejudice LaRue. She was given numerous and meaningful opportunities to examine the Guardian during the year and a half long proceedings.

¶36 First, although the Guardian submitted five reports, the first and by far the longest report is the most significant because it contains the Guardian's recommendation that Arne be the primary residential parent. As noted above, this first report makes the recommendation to change custody from joint parenting to one parent acting as the primary caretaker. To challenge this recommendation, LaRue cross examined the Guardian at the hearing during which this report was first considered by the court. During this hearing, LaRue was able to both question factual information presented in the report and was able to challenge the Guardian's credibility. At the conclusion of this three day hearing, the court decided to vacate the joint parenting agreement and decided that Arne would be the primary caregiver. Therefore, LaRue was able to cross examine the Guardian with relation to the facts, her opinions, and her credibility before the court made its key decision in this case. Further, the Guardian's subsequent four reports, including the final report, mainly indicate to the court the Guardian did not find any information that would change her recommendations, despite further investigations.

¶37 Second, as is provided for by § 40-4-215(4), MCA, LaRue had the opportunity to call as witnesses the people who the Guardian interviewed in making her recommendations. Many of these people did testify and LaRue was able to challenge how the Guardian's report represented their perspectives. Without exception, every person who was interviewed by the Guardian who also testified stated the Guardian's report properly presented their input. Therefore, LaRue was able to challenge in court both the Guardian's credibility in reporting to the court and the facts in the report.

¶38 Third, LaRue deposed the Guardian at length. This deposition was entered into

13

evidence at the final hearing. Therefore, LaRue was able to challenge the Guardian's credibility through this deposition in addition to her examinations of the Guardian at previous hearings.

¶39 Finally, although LaRue asserts the Guardian was bias because she did not contact all the people LaRue wanted her to, the Guardian did interview numerous people referred by LaRue. LaRue also had the ability to call any witnesses she desired. The record makes clear that LaRue was given ample and meaningful opportunity to present her disagreements with the facts in the Guardian's report. She was also given ample and meaningful opportunity to question the Guardian's factual assertions and credibility. Under the unique facts of this case, we hold the District Court's error in this case does not require reversal because LaRue's rights were not materially prejudiced.

## ISSUE THREE

¶40 **Did the District Court err in modifying the stipulated final parenting plan?**

¶41 LaRue argues the District Court did not meet the prerequisites to modify the stipulated final parenting plan under § 40-4-219, MCA, because it did not find there was a change in circumstances and because it failed to properly assess the best interests of the children. She argues that a change in circumstances that justifies a modification must significantly affect the child, and a voluntary choice to relocate by an adult will not suffice. LaRue also asserts the court did not properly assess the best interests of the children when it relied on the Guardian's recommendations. LaRue also points out facts that favor her being the residential parent in favor of her position. Conversely, Arne argues from facts relied on by the court. The Guardian generally agrees with Arne on this issue.

14

¶42 We hold the District Court properly modified the parenting plan. Section 40-4-219, MCA, governs when a court may amend a parenting plan. This section reads:

> (1) The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child. In determining the child's best interest under this section, the court may, in addition to the criteria in 40-4-212, also consider whether:
> . . . .
>> (d) one parent has willfully and consistently:
>>> (i) refused to allow the child to have any contact with the other parent; or
>>> (ii) attempted to frustrate or deny contact with the child by the other parent;
> . . . .
> (3) The court shall presume a parent is not acting in the child's best interest if the parent does any of the acts specified in subsection (1)(d) or (8).

¶43 We have held that although it is preferable for a district court to incorporate the statutory "change [of] circumstances" and "best interest" language into its findings and conclusions, it is not error when a court fails to do so if all the requirements of the statute are implicit in the court's findings. *In re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 30, 307 Mont. 60, ¶ 30, 36 P.3d 874, ¶ 30; *In re Marriage of Burk*, 2002 MT 173, ¶ 11, 310 Mont. 498, ¶ 11, 51 P.3d 1149, ¶ 11; Rule 61, M.R.Civ.P.

¶44 In this case, the court did not use the change of circumstances language. However, the court stated: "I'm denying the motion to implement the stipulated parenting plan. I believe it's impossible to perform as drafted and agreed upon by the parties and that's not due to their lack of effort. . . . It's due to their highly complicated method of communication that can't yield meaningful agreement without the involvement of a sophisticated mediator." In a later order, the court found that "[t]he level of conflict between the parties had increased

15

to the level that they were only able to resolve issues concerning visitation through . . . mediation . . . ." Implicit in these findings is the reality that substantial change occurred in the circumstances and this change significantly affected the children because the parties were unable to follow the stipulated plans. Therefore, the change in circumstances requirement of § 40-4-219, MCA, was met.

¶45 Regarding the best interests of the children, the District Court found that "LaRue was continually frustrating Arne's scheduled parenting time" and that although the parties worked with a third party "toward a parenting schedule . . . LaRue also refused to comply with the agreements made . . . ." Again, while the court did not use the statutory language, implicit in these findings is the court's conclusion that LaRue's conduct was not in the best interests of the children under § 40-4-219(3), MCA, and § 40-4-219(1)(d)(ii), MCA, because she frustrated Arne's contact with the children. Therefore, amendment of the parenting plan was in the children's best interests under § 40-4-219, MCA.

¶46 Finally, we disagree with LaRue that the court erred by relying on the Guardian's recommendations because her report was allegedly not in the children's best interests. Specifically, the Guardian noted both parties would have to work and both parties would need to hire child care. Therefore, this factor was not held against LaRue. Further, the Guardian's recommendation was not primarily based on where the parties would live, North Carolina or Utah. Rather, she recommended, and the court agreed, that wherever the parties lived, co-parenting was not an option due to the discord between them. She then recommended, and the court agreed, that Arne would be able to provide more stability and predictability for the children. As noted above, the underlying findings upon which these

16

conclusions are based are not clearly erroneous. Therefore, the District Court did not abuse its discretion in modifying the parenting plan because a change of circumstances occurred such that amendment was necessary to serve the best interests of the children.

## IV. CONCLUSION

¶47 Because the District Court properly considered the Guardian's investigation and recommendations and issued an order in the best interests of the children, we affirm.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE

17