
DA 11-0329

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 46

CRAIG J. PUCCINELLI,

        Petitioner and Appellee,

   v.

JOLANDA R. PUCCINELLI,

        Respondent and Appellant.


| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DR-09-158<br>Honorable John W. Larson, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Torrance L. Coburn, Tipp & Buley, P.C., Missoula, Montana

        For Appellee:

            Craig J. Puccinelli (Self-Represented) Missoula, Montana


Submitted on Briefs:  January 11, 2012

Decided:  February 29, 2012

Filed:

_____
                           Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Craig and Jolanda Puccinelli were married in September 1999. The couple had two daughters before they separated in March 2009. During the dissolution proceeding, a guardian ad litem (GAL) was appointed for the children. The GAL initially recommended co-parenting with equal visitation by both parents. At the January 2010 final hearing, the parties stipulated to the Fourth Judicial District Court that they had reached agreement on a final parenting plan. Additionally, they agreed that no child support or maintenance would be paid to either party. The District Court took judicial notice of the GAL's recommendations. Subsequently, and prior to dissolution, the GAL revised her recommendations and recommended that Craig be the children's primary residential parent with Jolanda having visitation rights. The court adopted the GAL's custody recommendation and also ordered Jolanda to pay Craig $477 per month in child support. Jolanda appeals. We reverse and remand.

## ISSUE

¶2     The dispositive issue on appeal is whether the District Court abused its discretion in relying upon hearsay evidence in order to determine the matter of child custody.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Craig and Jolanda married in Nevada in September 1999. Craig holds a Bachelor of Science degree in Business Administration earned before the couple married. During the marriage, Jolanda earned Bachelor of Science degrees in both Accounting and Education. In December 1999, the couple's first daughter was born and in April 2002, their second daughter was born. In the early years of the marriage, Craig and Jolanda

2

started and operated a jointly-owned embroidery business. Near the end of the marriage Jolanda got a job as a para-educator in the Frenchtown Public Schools while Craig continued operating the embroidery business. The parties separated in March 2009 and Craig petitioned for dissolution.

¶4    In mid-April 2009, a GAL was appointed to represent the interests of the minor children. Despite the parents' inability to get along and make joint decisions pertaining to the children, they nonetheless wished to co-parent their daughters. In July 2009, after home visits and multiple in-person and telephone interviews, the GAL submitted her initial report and parenting plan to the District Court recommending that the parents have a joint custody arrangement with each parent spending approximately equal time with the children. Vacation, summer, and holiday schedules were recommended as well.

¶5    On January 13, 2010, in preparation for the January 19 final hearing, the GAL submitted a revised final parenting plan, proposing a shared parenting arrangement similar to the one recommended in her July 2009 report. Also just prior to the January 19 final hearing, both parties submitted Proposed Findings of Fact and Conclusions of Law in which both parties supported the stipulated joint parenting arrangement without the necessity of maintenance or child support. In fact, it appears that from the time dissolution proceedings were initiated in March 2009 until at least August 2010, the parties shared equal parenting time and that neither paid child support to the other.

¶6    During the January hearing, both parties testified to their support of the GAL's recommended co-parenting arrangement. The GAL did not appear or participate in the hearing. The District Court took judicial notice of the GAL's recommendations.

3

However, because property-related financial issues arose during the hearing that could not be resolved without further documentation, the hearing was continued to allow the parties to provide such material to the court.

¶7 Upon receipt of the requested documents, the court reconvened the final hearing on March 24, 2010.[1] Both Craig and Jolanda testified as to the status of the financial issues. The parties were instructed to submit post-hearing filings, including status updates on the financial issues. The parties continued providing the court with financial updates until the final decree was issued.

¶8 In May 2010, the GAL, who had not actively participated in the case since submitting the final parenting plan, notified the court that the parties had contacted her with problems and issues between them. The GAL requested guidance. The District Court held a status conference in June 2010 to address the unresolved financial issues and, at that time, instructed the GAL to continue working with the family. After further investigation, on August 26, 2010, the GAL filed with the court a substantially revised recommended parenting plan. Among other changes, the guardian recommended that Craig be the primary residential parent with Jolanda receiving periodic weekend, weekday, holiday, and summer visitation. The District Court promptly issued an order adopting the GAL's recommendation with the caveat that the parties had the opportunity to object to the report within 10 days. Jolanda filed a timely objection to the revised

---

[1] The record contains a transcript of the January 19, 2010 hearing but does not contain a transcript of the March 24, 2010 hearing. For a determination of what occurred during the March hearing, we rely on the District Court minutes.

4

parenting plan. Without holding a hearing on the revised parenting plan, the court subsequently called for updated proposed findings and conclusions from both parties.

¶9 On March 9, 2011, the District Court issued its Findings of Fact and Conclusions of Law, Decree of Dissolution and Parenting Plan (Decree). The court adopted the GAL's recommendation and awarded Craig primary residential custody finding that such an arrangement was in the children's best interests. Jolanda received visitation rights. The court imputed an annual salary of $31,720 per year to Jolanda and ordered her to pay Craig $477 per month in child support. The court instructed that neither party would receive maintenance. Jolanda moved to have the Decree amended arguing errors of both fact and law.

¶10 Jolanda argued that the District Court's ruling was not "based upon the evidence provided at the final hearing [in January and March 2010]." She submitted that the evidence presented at the final hearing supported a finding that the original parenting plan recommended by the GAL was in the children's best interests. Without subsequent evidence to the contrary, Jolanda opined, the District Court's findings were clearly erroneous. Jolanda further argued that the District Court erroneously imputed an annual income to her when it had credible evidence of her actual salary before it. She submitted this imputed income error led to a child support error. She asked the District Court to amend the Decree accordingly. The District Court denied Jolanda's motion.

¶11 Jolanda appeals both the Decree and the District Court's denial of her motion to amend. As we resolve this matter based upon error in the Decree, we need not address Jolanda's claim of error as to the court's denial of her motion to amend.

**STANDARD OF REVIEW**

¶12     We review a district court's evidentiary rulings for an abuse of discretion.  The district court has broad discretion in determining the admissibility of evidence. Notwithstanding this deferential standard, however, judicial discretion must be guided by the rules and principles of law; thus, our standard of review is plenary to the extent that a discretionary ruling is based on a conclusion of law.  In such circumstances, we must determine whether the court correctly interpreted the law.  *In re T.W.*, 2006 MT 153, ¶ 8, 332 Mont. 454, 139 P.3d 810 (internal citations omitted).

¶13     We review a district court's findings of fact regarding a child custody ruling to determine if the findings are clearly erroneous.  A finding is clearly erroneous if it is not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the evidence leaves this Court with a definite and firm conviction that a mistake has been made.  *Albrecht v. Albrecht*, 2002 MT 227, ¶ 8, 311 Mont. 412, 56 P.3d 339.

**DISCUSSION**

¶14     *Did the District Court abuse its discretion in relying upon hearsay evidence in order to determine the matter of child custody?*

¶15     Jolanda argues that from the initiation of the proceeding in March 2009 until August 2010, all evidence pertaining to the parenting arrangement of the children indicated that it was in the children's best interests to be co-parented by both parents, each parent spending approximately equal time with the children.  In August 2010, however, the GAL submitted a revised report recommending that Craig be the primary

6

residential parent. The court did not hold a hearing in the matter after the GAL revised her recommendation and subsequently granted primary custody to Craig expressly based upon the GAL's report.

¶16 Jolanda asserts that the District Court's decision to award primary custody to Craig was not supported by the evidence and was therefore clearly erroneous. She also posits that the GAL's August 2010 revised plan constituted inadmissible hearsay evidence. She further claims that the court's failure to conduct a hearing at which the GAL would testify and Jolanda would have an opportunity to cross-examine the GAL was a violation of her due process rights.

¶17 We have previously addressed the admissibility of hearsay evidence in a custody hearing. *In re Swan,* 173 Mont. 311, 567 P.2d 898 (1977). In *Swan*, various reports were prepared by State social services workers addressing the mother's ability to care for her children, the children's adjustment to foster care, and various police reports. While these reports were available at the time of the hearing—a hearing at which State social workers testified—they were not offered into evidence by the State. These reports contained written hearsay that did not fall under any recognized exception to the hearsay rule. Nonetheless, the court reviewed the reports and expressly referenced them in its ruling granting permanent custody of the Swan children to State social services. In reversing the district court, we stated:

> As to written hearsay contained in the reports submitted to the court, this jurisdiction has long followed the rule that unsworn statements made out of court with no opportunity afforded to confront the writer and question him as to their veracity are hearsay.

7

. . .

> Unsworn reports where there is no right to cross-examine come within the hearsay rule and are inadmissible.

*Swan*, 173 Mont. at 314-15, 567 P.2d at 900-01 (internal citations and quotations omitted).

¶18     Similarly, in *In re Moyer*, 173 Mont. 208, 567 P.2d 47 (1977), the mother of the children argued that a report submitted to the court by State Child Welfare Services contained hearsay statements that were prejudicial to her and which had strongly influenced the court's decision to award permanent custody of the children to the State. We acknowledged that "It is true that a judge violates due process requirements if he bases his child custody order on statements in a welfare department report without requiring the authors of the report to testify at a hearing and be subject to cross-examination." *Moyer*, 173 Mont. at 211, 567 P.2d at 49.  We continued, however, that "In a civil case . . . which is tried before the court without a jury, there is a presumption that the trial judge has disregarded all inadmissible evidence in reaching his decision." *Moyer*, 173 Mont. at 211, 567 P.2d at 49.  We noted that the mother/appellant in *Moyer* had not rebutted this presumption nor had she shown that the court had based its decision on this inadmissible evidence.  We therefore held that absent any evidence that the district court had considered the inadmissible evidence, the district court's ruling would stand.  In contrast to the situation in *Moyer*, here the District Court affirmatively relied on the inadmissible evidence.

8

¶19	Subsequently, in *Ronchetto v. Ronchetto*, 173 Mont. 285, 567 P.2d 456 (1977), the parents were each seeking custody of the minor child. Initially, mother got primary custody but later father petitioned for custody alleging molestation. Following a hearing, the court modified the divorce decree and awarded custody to father and his wife. Mother appealed, in part claiming the district court had based its decision on an investigative report prepared by State social services that contained hearsay. We agreed, stating:

> The out of court statements of the [social] workers, which were contained in their investigative report constitute hearsay evidence. [We] recently held that consideration of investigation reports in a child custody case, without requiring the authors to testify at a hearing, constitutes reversible error. To satisfy the due process rights of the custodial parent and to accurately assess the best interests of the minor child, the trial judge must require "***the authors of the report to testify at a hearing and be subject to cross-examination . . . ."

*Ronchetto*, 173 Mont. at 289, 567 P.2d at 458 (*citing Swan* and *Moyer*) (internal quotations omitted). We therefore reversed and remanded the matter "for the purpose of conducting another permanent custody hearing." *Ronchetto*, 173 Mont. at 289, 567 P.2d at 458 .

¶20	Craig argues that *Jacobsen v. Thomas*, 2004 MT 273, 323 Mont. 183, 100 P.3d 106, is controlling. In *Jacobsen*, the district court did not allow the GAL to testify out of concern that such testimony would violate Rule 3.7 of the Montana Rules of Professional Conduct and would result in reversible error. We determined that it was error to *disallow* the GAL's testimony but that under the facts of *Jacobsen*, it was not reversible error. We held that because the mother had numerous opportunities throughout the dissolution

9

proceeding to examine, cross-examine, and depose the GAL, her due process rights were not materially prejudiced by the inaccessibility of the GAL at the last hearing. *Jacobsen*, ¶ 39. Craig maintains that we should apply the same analysis to the case at bar. We disagree. Unlike the situation in *Jacobsen*, here Jolanda had no cause to depose the GAL during the proceedings because she and Craig both agreed with the GAL's initial recommendations. Because the GAL then radically revised her parenting recommendations *following* the final hearing, Jolanda had no opportunity to cross-examine her concerning her conclusions. While Jolanda did have the opportunity to submit written objections or comments to the GAL reports, such opportunity does not satisfy the due process right to confront and cross-examine an adverse witness. *In re R.M.T.*, 2011 MT 164, ¶ 44, 361 Mont. 159, 256 P.3d 935 ("Due process requires the court to afford parties a meaningful opportunity to confront and cross-examine adverse witnesses. A court violates a party's due process rights if the court relies on a report in a custody proceeding without requiring the author of the report to testify.") (Citations omitted.).

¶21 Under our clear precedent, a district court may not rely on hearsay evidence contained in out-of-court reports when the report's author does not testify at the custody hearing and is not subject to cross-examination. To rely on such reports is a violation of the parent's due process rights. Without the inadmissible hearsay evidence, there was wholly insufficient evidence before the court to sustain its award of primary residential custody to Craig. We therefore reverse the court's custody ruling and remand this matter

for the purpose of conducting another custody hearing, as we did in *Ronchetto*, at which the GAL must testify and be subject to cross-examination.

¶22 The court's post-remand findings must reflect consideration of, if not reference to, the "best interest of the child" factors set forth in § 40-4-212, MCA. While it is unnecessary to "make specific findings on each statutory factor in determining best interest of children under § 40-4-212, MCA," the court should "express the 'essential and determining' facts upon which it rests its conclusion." *In re Marriage of Wang*, 271 Mont. 291, 293, 896 P.2d 450, 451 (1995) (*citing Lorenz v. Lorenz*, 242 Mont. 62, 788 P.2d 328 (1990)). In other words, it is inadequate to summarily state that the court's determination of custody is in the "best interests of the child" without explaining how such custody arrangement actually serves the children's best interests.

¶23 Finally, because we have reversed the District Court's custody ruling, it follows that the child support order premised on that ruling must be vacated. Upon remand, and in the event the District Court determines that a child support order is indicated, the court shall take evidence of the parties' present actual income and render a determination of child support in accordance with the presented evidence.

## CONCLUSION

¶24 For the foregoing reasons, we reverse the District Court's rulings and remand for further proceedings in accordance with this Opinion.

/S/ PATRICIA COTTER

11

We concur:


/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BRIAN MORRIS