FILED

08/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0705

DA 23-0705

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 171N

IN RE THE MARRIAGE OF:

HEATHER HANDY, n/k/a
HEATHER MILLER,

      Petitioner and Appellee,

  and

JACOB HANDY,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                In and For the County of Lincoln, Cause No. DR-21-133
                Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            David J. Lee, Caydon C. Keller, Lee Law Office PC, Shelby, Montana

      For Appellee:

            Mary Kate Moss, Michelle R. Finch, Timothy Shaffer, Bridger Dolan,
            Gravis Law, PLLC, Kalispell, Montana

Submitted on Briefs:  June 19, 2024

Decided:  August 6, 2024

Filed:

_____
                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jacob Handy (Jacob) appeals the Nineteenth Judicial District Court's November 9, 2023 Order on Contempt and Denying Request to Replace Guardian Ad Litem. The Order found Jacob in contempt of the Stipulated Parenting Plan and ordered him to pay Heather Miller's (Heather) attorney fees and costs for her motion for contempt. The Order also adjusted the Final Parenting Plan in various ways to ameliorate the impact of Jacob's contempt on the parties' children. The issue on appeal is whether the District Court erred by ordering Jacob in contempt, amending the parenting plan, and awarding Heather attorney fees and costs. We affirm.

¶3 Heather and Jacob have three young children together. Heather and Jacob divorced on July 26, 2022, and entered a Final Stipulated Parenting Plan (Final Plan). The Final Plan provided, in relevant part, the parties were to utilize the "Our Family Wizard" application to communicate, educational decisions would be made jointly and the children were to remain in public school, healthcare decisions would be made jointly, religious decisions would be made jointly, and each parent would have their own specified designated parenting time.

¶4 According to Heather, Jacob violated the terms of the Final Plan. Heather alleged Jacob did not use Our Family Wizard to communicate with her, he failed to ensure the children's attendance in school and extracurricular activities, he established therapy for the children without agreement from Heather, he had the children baptized without telling Heather, and he refused to facilitate parenting time between Heather and the children. Thus, Heather filed a motion for contempt.

¶5 The District Court held a hearing on August 23, 2023, to consider Heather's motion. The children's counselor, Ms. Fantozzi, testified the children's behavior changed when they started living with Jacob full time; she testified the children would say things to her that they never said before, like she was a man-hating woman and "we hate you because, you know, you're evil. You're doing bad things." Ms. Fantozzi also testified that Jacob started joining the children's sessions and she felt unsafe around him. She testified that when the children were with their mother, they showed signs of positive growth, but when they spent time with their father, that growth disappeared and turned to malice. As a result, Ms. Fantozzi concluded her services with the family.

¶6 Rochelle Beley, another of the children's counselors, testified that when she saw the children, they would refer to their mother as a sinner and whore, and they referred to their mother's boyfriend as a whoremonger. Beley testified the children told her they learned those words when their father read them scripture from the bible. When Beley suggested to Jacob she did not think it was appropriate to read those things to the children, Jacob was unreceptive and thought it appropriate. Beley testified the children were more attentive at their mother's house, and it was more chaotic at their father's house. Beley ended up

3

terminating her services with the family because she was not seeing any progress in the children.

¶7 Jacob testified he did not force the children to remain in school or to go to Heather's house during her designated parenting times because the children refused to do so. According to Jacob, he did what he thought was in their best interest to protect their psychological and emotional well-being. Jacob admitted to setting the children up with a new therapist without Heather's consent, which at the time, the Final Plan required all non-emergency medical decisions to be made jointly. Jacob also testified about how the children were removed from school and he began homeschooling them, despite the Final Plan requiring all educational decisions to be made jointly. The Final Plan also required the children to remain in public school until the end of the first semester of the 2022-2023 school year. Jacob testified the children were removed in October 2022, prior to the end of the first semester.

¶8 Based on evidence presented at the hearing, the District Court found Jacob in contempt. However, the court stated, "sanctions such as incarceration and/or a fine, at this time, do not correct or ameliorate what Jacob has done to the relationship between the children and their mother." Instead of sanctioning Jacob, the court ordered he pay Heather's attorney fees and costs for her motion for contempt. The court warned "further defiance of the Court's orders SHALL subject him to the full contempt powers of this Court, including but not limited to incarceration and alternative placement of the children." Further, the court provided the children would primarily reside with Jacob, but parenting time would be decided by the children's counselor. The court also required the parties to

4

communicate via Our Family Wizard. Finally, the District Court, as an interim measure, amended three pages of the Final Plan.

¶9 The first amendment prohibited both parties from consuming alcohol and any intoxicating substances. The second amendment provided that the paragraph stating, "if either parent is unavailable to personally parent the children for more than four (4) hours, the other parent shall be given first option to care," no longer applied. The third amendment provided all educational decisions will be made by the children's counselor, no spiritual decisions would be made, and neither party is allowed to change the children's counselor.

¶10 We review an appeal from an order of contempt to determine whether substantial evidence supports the judgment. *Morton v. Lanier*, 2002 MT 214, ¶ 27, 311 Mont. 301, 55 P.3d 380. Disobedience of any lawful judgment, order, or process of the court constitutes contempt. Section 3-1-501(1)(e), MCA. Contempt can be civil or criminal. Section 3-1-501(3), MCA. Further:

> A contempt is civil if the sanction imposed seeks to force the contemnor's compliance with a court order. A contempt is criminal if the court's purpose in imposing the penalty is to punish the contemnor for a specific act and to vindicate the authority of the court. If the penalty imposed is incarceration, a fine, or both, the contempt is civil if the contemnor can end the incarceration or avoid the fine by complying with a court order and is criminal if the contemnor cannot end the incarceration or avoid the fine by complying with a court order.

Section 3-1-501(3), MCA.

¶11 Contempt can also be direct or indirect. Direct contempt is committed in the presence of the court and requires the court to take immediate action. Section 3-1-511, MCA. Indirect contempt is not committed in immediate view and presence of the court.

5

Section 3-1-518, MCA. Here, Jacob's contempt was civil because the District Court sought to force his compliance with the court's Final Plan. The contempt is also indirect because the alleged violations occurred outside the presence of the court.

¶12 Based on the evidence presented at the show-cause hearing that Jacob failed to abide by the Final Plan's provisions, including keeping the children in school for the first semester, not using Our Family Wizard, making medical and religious decisions without consulting Heather, and not respecting Heather's designated parenting time, we find the District Court had sufficient evidence to find Jacob in contempt. We further find the District Court's amendment of the Final Plan to ameliorate the impact of Jacob's contempt on the parties' children to be appropriate.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE