FILED

04/28/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0318

DA 25-0318

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 90

IN RE THE MARRIAGE OF:

HEATHER HANDY, n/k/a HEATHER MILLER,

Petitioner and Appellee,

and

JACOB HANDY,

Respondent and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DR-21-133
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Nicholas D. Connor, Mathew M. Stevenson, Kimberly J. Wein,
Stevenson Law Office, Missoula, Montana

For Appellee:

Mary Kate Moss, Michelle R. Finch, Gravis Law, PLLC, Whitefish,
Montana

Submitted on Briefs:  March 25, 2026

Decided:  April 28, 2026

Filed:

_____
Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1 Jacob Handy (Jacob) appeals the April 23, 2025 order of the Nineteenth Judicial District Court, Lincoln County, granting in part Heather Miller's (Heather) motions to amend the parties' parenting plan and for contempt and the court's April 23, 2025 Amended Final Parenting Plan. We address the following issues:

1. *Whether the District Court abused its discretion by amending the parenting plan without holding an evidentiary hearing.*

2. *Whether the District Court erred by relying on the written assessments of the minor children's counselor without affording Jacob the opportunity to examine her at an evidentiary hearing.*

We conclude that the court's failure to hold an evidentiary hearing on Heather's motion to amend the parenting plan and afford Jacob the opportunity to cross-examine the court-appointed counselor was reversible error. Accordingly, because we reverse and remand for an evidentiary hearing, we do not reach the merits of Jacob's separate claim that the amended parenting plan was not in the children's best interests.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Jacob and Heather have three children together, Z.H. (age 14), E.H. (age 12), and K.H. (age 9). The parties' marriage was dissolved by decree in July 2022. According to the final parenting plan, the parties were to parent their three children equally, alternating weeks, and communicate strictly through a structured parenting application; and all three children were to attend public school and see a mutually-approved therapist. After entry of the dissolution decree, the parties stipulated to appointment of a guardian ad litem

2

(GAL), Joseph Raffiani, to mitigate issues arising from the children's public school attendance, performance, and behaviors, and the parenting schedule.

¶3 In October 2022, Heather filed a motion for contempt, alleging that Jacob was violating numerous aspects of the final parenting plan. In June 2023, while her contempt motion was pending, Heather filed a motion to compel the GAL's report, dismiss him, and reappoint a prior GAL. The trial court set a hearing on Heather's motions for August 23, 2023.

¶4 On August 3, 2023, prior to the scheduled hearing, Heather filed a motion to amend the parties' parenting plan, asking the court to address changed circumstances since entry of the final parenting plan. Heather asserted that her moving from Eureka to Libby constituted a changed circumstance because 50/50 parenting was impossible "at a distance." She proposed that the children primarily reside with her, Jacob have parenting time every other weekend during the school year, and the parties have 50/50 parenting time in the summer. Jacob filed his response to Heather's motions on August 15, 2023, denying that he was in contempt but agreeing that Heather's move to Libby was a changed circumstance warranting amendment. Based on the GAL's recommendation, Jacob proposed the children primarily reside with him, not Heather. That same day, the GAL filed his report to the court, recommending, in part, that the children primarily reside with Jacob and Heather have regular and frequent parenting time. On August 23, 2023, the day of the hearing, Heather filed an objection to the GAL's report.

3

¶5 The District Court rendered its decision on November 9, 2023, finding Jacob in contempt but declining to dismiss the GAL.[1] Based on evidence of the children's continued and violent resistance to parenting time with Heather, the court ordered the children primarily reside with Jacob. The court appointed a counselor, Leslie Sterling, granting her sole discretion regarding educational and "spiritual" decisions concerning the children and prohibiting counseling by anyone other than her. The court also continued Raffiani as GAL. Although the court made various other minor amendments to the parties' July 2022 final parenting plan,[2] its order did not address Heather's move from Eureka to Libby. In late November 2023, Sterling sent a letter to the court "withdrawing" from the case because she did not want to interfere with the children's then-ongoing counseling with other providers or work with a family so resistant to her services.

¶6 On December 7, 2023, Jacob appealed the District Court's November 9, 2023 order. That same day, Heather filed an ex parte motion to amend the parenting plan and for contempt along with a supporting affidavit. Heather claimed Jacob was in contempt of the November 9 order because he was noncooperative with Sterling and engaged other therapists. Heather further claimed "emergency amendment" of the parenting plan was necessary under §§ 40-4-219(1)(a)(iv)(A)-(B) and -220(2)(a)(ii), MCA, because Jacob was denying Heather contact with the children, who were suffering mentally and emotionally

---

[1] As sanction, the court ordered Jacob to pay Heather's attorney fees associated with the contempt motion.

[2] We discussed these amendments in *In re Marriage of Handy*, 2024 MT 171N, ¶ 9, 418 Mont. 547, 553 P.3d 438.

4

without therapeutic support or maternal contact, and because Jacob continued to withhold the children from adequate formal education and extracurricular activities.

¶7 Despite the pending direct appeal, Jacob answered Heather's motion. On December 12, 2023, the District Court issued an order denying emergency relief but stating that Heather had "alleged circumstances that may warrant amendment to the parenting schedule" thus requiring full briefing "and likely a hearing." The court ordered supplemental response, noting that, "upon receipt of the full briefing, the Court [would] set a hearing." The court also ordered that, until Sterling could be replaced, the parties had to follow the GAL's parenting directives. Throughout January 2024, Heather and Jacob supplemented their filings. Jacob submitted affidavits on behalf of himself and two independently-retained therapists who had been seeing the children for months. Heather submitted additional affidavits on behalf of herself, her new husband, and a prior family counselor. On March 13, 2024, after briefing concluded, the District Court stayed proceedings pending resolution of Jacob's appeal.

¶8 On August 6, 2024, we affirmed the District Court's November 9, 2023 order finding Jacob in contempt and declining dismissal of the GAL. *In re Marriage of Handy*, 2024 MT 171N, 418 Mont. 547, 553 P.3d 438. Afterward, the District Court proceedings resumed. In September, Heather filed an unopposed motion for a "telephonic status hearing to set hearing dates and any supplemental briefing deadlines" on her "outstanding" August 3, 2023 motion to amend the parenting plan "based upon her move to Libby" and December 7, 2023 ex parte motion to amend the parenting plan and contempt based on

5

Jacob's "ongoing interference with parenting time" and violations of the court's November 9, 2023 order.

¶9 The court set a "status hearing" for October 15, 2024. Days before the hearing, Jacob's attorneys sought and were granted leave to withdraw from representation, so Jacob appeared pro se at the status hearing. Heather contends, and Jacob does not dispute, that, at the hearing, the court set filing deadlines and informed the parties it would decide later whether to hold a hearing and indicated it may rule on the affidavits alone.[3] Heather notes that Jacob indicated he understood and did not request a hearing. The District Court did not set any further hearing on Heather's motion to amend the parenting plan.

¶10 Following the status hearing, Heather submitted two more affidavits on behalf of herself and two "status letters" prepared by Sterling since she began counseling the children again in August 2024. In one letter, Sterling explained that she had seen Heather and the children five times since August 2024 but ultimately decided to exclude E.H. (the middle child) from sessions based on his disruptive behavior. In the other letter, directly addressed to the district court judge, Sterling described Heather's interactions with Z.H. (the oldest child) and K.H. (the youngest child) as generally positive—Heather demonstrated patience, empathy, consistency and persistence, and maintained good communication with appropriate boundaries. However, since October 2024, the children no longer wished to participate in therapy, which Sterling attributed to Jacob's influence.

---

[3] The transcript of the October 15, 2024 status hearing is not of record on appeal, despite Jacob deeming it a necessary transcript. For reasons explained in this Opinion, we conclude that the status hearing transcript is not material to this appeal and render our decision without it.

¶11 Heather filed a final affidavit on behalf of herself, her fifth, in March 2025. Afterward and without any evidentiary hearing on Heather's August 3, 2023 motion, the District Court issued an order on April 23, 2025, finding Jacob in contempt and amending the parenting plan in part as to K.H.[4] The court also issued an Amended Final Parenting Plan ordering that K.H. reside primarily with Heather and Z.H. and E.H. reside primarily with Jacob, with Heather's parenting time of Z.H. and E.H. and Jacob's parenting time of K.H. to be determined by the children's respective counselors, the goal being that Heather and Jacob would eventually "exchange children every other weekend." The court expressly noted its reliance on Sterling's letters, stating it was "encouraged" by Sterling's positive reports, which corroborated Heather's claims that her relationships with the children were improving. The court ordered that K.H. continue counseling exclusively with Sterling and granted Sterling sole discretion regarding Jacob's contact with K.H. and K.H.'s contact with his siblings.[5]

¶12 Jacob appeals the court's April 23, 2025 order and amended parenting plan. He contends that (1) the court erred as a matter of law by amending the parties' parenting plan

[4] Jacob does not contest the District Court's ruling on the issue of contempt in its April 23, 2025 order. We therefore do not address that aspect of the court's order and instead address only the issue of parenting plan amendment.

[5] We note the District Court's and GAL's repeated use of the words "custody" and "visitation" in the proceedings below. Almost 30 years ago, Montana's Legislature made the deliberate choice to "revise the applicable terminology" in Title 40, chapter 4, part 2, MCA, "to remove adversarial terminology." 1997 Mont. Laws ch. 343; *Senate Jud. Comm. Hrg. on HB 231*, 55th Leg., Reg. Sess. (Mar. 19, 1997). The Legislature amended these statutes to eliminate the words "custody" and "visitation," replacing them with neutral terms like "parenting," "parenting authority," "parenting plan," "parental contact," "residential schedule," and "parenting proceeding," etc. We urge courts and parties to use these terms instead of the outdated, adversarial terminology the Legislature specifically chose to abolish.

without holding a hearing pursuant to § 40-4-220(1), MCA; (2) the court erroneously deprived him of an opportunity to examine Sterling or the GAL pursuant to §§ 40-4-214(2) and -215(4), MCA; and (3) the amended parenting plan was not in the children's best interests. Heather counters that (1) the District Court had all the information necessary to render its decision; the August 23, 2023, hearing satisfied § 40-4-220's requirements; and, though he could have, Jacob never requested a hearing; (2) Sterling was only a "fact witness" and therefore § 40-4-214(2) did not apply; and (3) the parenting plan amendments were in the children's best interests.

¶13 We do not reach the parties' arguments regarding the children's best interests because we hold that the District Court erred in amending the parenting plan without an evidentiary hearing. We also do not reach the merits of Jacob's arguments regarding Sterling's potential conflicts of interest or ethical violations because Jacob will have the opportunity to address those issues through cross-examination at the evidentiary hearing to be held on remand in accordance with § 40-4-220(1), MCA, and this Opinion.

**STANDARD OF REVIEW**

¶14 We review a district court's denial of an evidentiary hearing for a clear abuse of discretion. *In re A.M.B.-B.*, 2025 MT 270, ¶ 10, 425 Mont. 79, 579 P.3d 989; *Harrington v. Energy W. Inc.*, 2015 MT 233, ¶ 11, 380 Mont. 298, 356 P.3d 441. We review a court's decision regarding a parenting plan for an abuse of discretion but review any underlying factual findings for clear error and conclusions of law for correctness. *A.M.B.-B.*, ¶ 10. A court abuses its discretion when it exercises granted discretion based on a clearly erroneous finding of fact, an erroneous conclusion or application of law, or otherwise acts

8

arbitrarily, without conscientious judgment or exceeding the bounds of reason resulting in substantial injustice. *In re Marriage of Jackson*, 2025 MT 177, ¶ 9, 423 Mont. 329, 573 P.3d 812.

## DISCUSSION

¶15    *1. Whether the District Court abused its discretion by amending the parenting plan without holding an evidentiary hearing.*

¶16    A court may amend a prior parenting plan upon finding that "a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child." Sections 40-4-219(1), -212(1), MCA. These standards are met "upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan." Section 40-4-219(1), MCA. "Upon a parent filing an affidavit in support of a requested amendment and receiving an opposing affidavit, if any, the court shall set a hearing on the request for amendment if the court finds that adequate cause is established by the affidavits based on the best interests of the children." *In re L.R.*, 2023 MT 235, ¶ 9, 414 Mont. 191, 539 P.3d 642 (citing § 40-4-220, MCA[6]); *A.M.B.-B.*, ¶ 12.

¶17    Where the parent seeking amendment by affidavit plausibly alleges a qualifying change in circumstances under § 40-4-219(1), MCA, that showing triggers the mandatory

---

[6] "[T]he moving party seeking . . . amendment of a final parenting plan shall submit, together with the moving papers, an affidavit setting forth facts supporting the requested plan or amendment and shall give notice, together with a copy of the affidavit, to other parties to the proceeding, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, based on the best interests of the child, in which case it shall set a date for hearing on an order to show cause why the requested plan or amendment should not be granted." Section 40-4-220(1), MCA.

hearing requirement of § 40-4-220(1), MCA. *A.M.B.-B.*, ¶¶ 12, 15 (the court must take affidavit assertions as true for purposes of ascertaining whether adequate cause exists for a hearing). The hearing requirement of § 40-4-220(1) embodies due process intended to protect parents' fundamental liberty interests in parenting their children. *In re Marriage of Wendt*, 2014 MT 174, ¶ 11, 375 Mont. 388, 329 P.3d 567. The parent need not establish entitlement to amendment conclusively at the affidavit stage. Section 40-4-220(1), MCA, is not a merits adjudication; it is a screening mechanism requiring only a threshold showing sufficient to warrant "testing through live evidence." *A.M.B.-B.*, ¶ 17; *L.R.*, ¶ 11. If affidavit allegations conflict, the court cannot resolve credibility or factual disputes without evidence. *A.M.B.-B.*, ¶ 17.

¶18 In *A.M.B.-B.* and *L.R.*, we held that the district courts abused their discretion in denying the parents' motions to amend their respective parenting plans without evidentiary hearings where each parent had made the threshold showing of plausible changes in circumstances warranting amendment. *A.M.B.-B.*, ¶¶ 11-18; *L.R.*, ¶¶ 8-13. Here, the circumstances are different: the District Court *amended* the parties' final parenting plan based only on competing affidavit assertions regarding the children's best interests and without an evidentiary hearing to resolve the fact and credibility questions raised in those filings.

¶19 Without an evidentiary hearing, the court resolved contested best-interest issues on written submissions alone. Although the court discussed the § 40-4-212(1), MCA, factors in its April 23, 2025 order, its determination rested on competing affidavits and written reports that were never tested through live testimony, cross-examination, or credibility

10

findings made after hearing evidence.[7]  The failure to hold an evidentiary hearing on a motion to amend a parenting plan under § 40-4-219(1), MCA, where adequate cause exists for a hearing under § 40-4-220(1), MCA, renders any subsequent decision regarding amendment void for failure of constitutional and statutory due process and requires reversal and vacatur of any ensuing amendment order.  *Wendt*, ¶ 11.

¶20    Implicit in the court's decision to act on Heather's motion and amend the parties' parenting plan is that Heather made a sufficient threshold showing of adequate cause under § 40-4-220(1), MCA.  The court was therefore required to set a hearing on the merits of amendment and could not amend the parenting plan on contested affidavit assertions alone.  Neither party contends that Heather failed to make a plausible claim for amendment under § 40-4-219(1), MCA.  In fact, both parties *agreed* that amendment was warranted based on Heather's recent move from Eureka, where Jacob and the children lived, to Libby.  But they disagreed as to what parenting arrangement was in the children's best interests given this and other changed circumstances.

¶21    For example, Heather alleged that the children's mental health was deteriorating in their current tele-health therapeutic environment; they were "regressing" due to being home-schooled; Jacob was strictly controlling and interfering with her access to the children, requiring she see them only in Eureka; and the children's therapists and GAL

---

[7] *Compare Jacobsen v. Thomas*, 2006 MT 212, ¶¶ 14-23, 333 Mont. 323, 142 P.3d 859 (vacating order modifying parenting plan where court made no factual findings to support its legal conclusions).  Here, the District Court's April 23, 2025 order amending the parenting plan set out "conclusions of law" and "discussed" the § 40-4-212, MCA, factors, but it did so without the evidentiary hearing required to resolve the sharply disputed factual predicates underlying those factors.

were biased, enabling Jacob's negative influence, and actively working against reunification. Jacob countered that the children refused to spend time with Heather, including running away during her parenting time, because she was emotionally and physically abusive; Heather's contact was sporadic and she often resisted the GAL's scheduling recommendations; and it was Heather's behavior, not counseling, that was negatively affecting the children's mental health. Because the court did not hold the hearing required under § 40-4-220(1), MCA, none of these allegations were tested.

¶22 Numerous other parties weighed in on the dispute via affidavit. Two former family counselors agreed the children were better off living primarily with Heather. The children's current therapist since 2022 agreed their mental health was deteriorating—the children were often distressed and required "crisis management"—but attributed that change to Heather's erratic conduct and persistent interference with their therapy. Z.H.'s therapist believed living full-time with Heather would be detrimental to the children's mental health. In a separate affidavit, Heather discounted this therapist's assessment, arguing the court should "completely disregard" it. As with the parties' allegations, none of the affiants' allegations were tested because the court did not hold the mandatory evidentiary hearing.

¶23 It is apparent on this record that the children's best interests remained highly contested up to the point that the District Court amended the parenting plan. The court resolved these conflicts without any evidence beyond competing affidavit allegations. This was a clear abuse of the court's discretion.

12

¶24 Heather contends that the District Court was not required to hold an evidentiary hearing on her motion for several reasons. First, the court was "equipped with sufficient facts" from the parties' "submissions, arguments, and affidavits" to render a decision. But, as noted, "facts" concerning the children's best interests were highly contested and the court could not resolve factual or credibility disputes regarding parenting time on affidavits alone. *A.M.B.-B.*, ¶ 12; *accord Wendt*, ¶ 11. Nor did the court formally resolve these disputes; it did not render a single finding of fact regarding the § 40-4-212(1), MCA, best-interests or § 40-4-219(1), MCA, changed-circumstances factors in its April 23, 2025 order.

¶25 Second, Heather suggests that the August 23, 2023 hearing on her motion for contempt and to dismiss the GAL satisfied the § 40-4-220(1), MCA, hearing requirement. Although Heather filed a motion to amend the parenting plan based on her recent move to Libby in advance of the August 23 hearing, and asked the court to consider that motion at the hearing, the court's November 9, 2023 order did not address Heather's asserted change in circumstances, render any findings or conclusions under §§ 40-4-219 or -212, MCA, or amend the parenting plan in response to her motion. Hence, Heather filed a new motion to amend on December 7, 2023. Heather's request for a status hearing on her "outstanding" August 3 and December 7 motions confirms that the amendment issue was neither addressed nor resolved at the August 23, 2023 hearing or in the subsequent November 9, 2023 order.

¶26 Finally, Heather argues that Jacob could have, but did not, request an evidentiary hearing and points to the October 15, 2024 status hearing as showing his acquiescence to

13

a ruling on the written submissions alone. We disagree. Section 40-4-220(1), MCA, places the duty to set the hearing on the court, not on the parties. Once the court determines that adequate cause exists, the statute provides that the court "*shall* set a date for hearing on an order to show cause why the requested plan or amendment should not be granted." (Emphasis added.) The hearing requirement is thus mandatory, not optional, and it is not extinguished by a party's silence at a status conference. Nothing that may have been said at the October 15, 2024 status hearing can satisfy the statute. The status hearing was a scheduling conference, not an evidentiary hearing on the merits of the parenting-plan amendment motion. Even if the District Court alerted the parties that it may decide the matter without a hearing, that advisement did not relieve the court of its statutory obligation to set the hearing once it proceeded to adjudicate the contested motion on the merits. Because the parties' competing affidavits presented sharply disputed factual issues regarding parental interference and the children's mental health, therapy, schooling, and best interests, § 40-4-220(1), MCA, required the court to resolve those disputes through live evidence. Jacob was not required to request what the statute required the court to provide.

¶27     We hold that the District Court was required, under § 40-4-220(1), MCA, to hold an evidentiary hearing on Heather's motion before amending the parties' final parenting plan. The court's failure to do so was a clear abuse of discretion. Further, because the court rendered its decision without the hearing required by § 40-4-220(1), MCA, and without the process due in a contested parenting-plan amendment proceeding, its Amended Final Parenting Plan must be vacated. On remand, the District Court must set the contested

14

matter of parenting plan amendment for an evidentiary hearing pursuant to § 40-4-220(1), MCA.

¶28   *2. Whether the District Court erred by relying on the written assessments of the minor children's counselor without affording Jacob the opportunity to examine her at an evidentiary hearing.*

¶29   Jacob asserts other errors arising out of the District Court's decision to amend the parties' parenting plan without an evidentiary hearing. For example, Jacob contends that he was entitled to examine court-appointed counselor Sterling under § 40-4-214(2), MCA, because the District Court relied on Sterling's professional opinions in rendering its decision. He also claims that Sterling was disqualified from rendering parenting plan recommendations due to conflicted interests and that GAL Raffiani was the only person qualified to advise the court or make recommendations regarding a parenting plan. Jacob says he was entitled to examine the GAL as well under § 40-4-215(4), MCA, but did not have the opportunity because the court did not hold an evidentiary hearing. Because we remand for an evidentiary hearing, we address some, but not all, of Jacob's arguments.

¶30   We have previously recognized that parents must be given a meaningful opportunity to examine witnesses in parenting cases "so the trier of fact can assess factual disputes and weigh credibility." *Jacobsen v. Thomas*, 2004 MT 273, ¶ 34, 323 Mont. 183, 100 P.3d 106. Montana law governing parenting cases codifies these due process principles. Section 40-4-214(2), MCA, provides:

> The court may seek the advice of professional personnel, whether or not employed by the court on a regular basis. The advice given must be in writing and made available by the court to counsel upon request. *Counsel may examine as a witness any professional personnel consulted by the court.*

15

(Emphasis added.)  Heather does not dispute that the District Court relied on Sterling's "status letters" in its parenting plan determination.  She argues only that, because Sterling was not specifically appointed in an advisory or consulting capacity, § 40-4-214(2), MCA, does not apply.

¶31　The record demonstrates that the District Court relied on Sterling's written professional assessments in resolving disputed parenting issues.  In its April 23, 2025 order, the court expressly stated it was "encouraged" by Sterling's reports and used those reports to support its conclusions regarding the children's relationships with Heather and the structure of future parent-child contact.  The court further ordered that Sterling would continue as K.H.'s counselor and would control Jacob's contact with K.H. and K.H.'s contact with his siblings.

¶32　Whether Sterling is characterized as a treating counselor, a professional person consulted by the court, or both, the dispositive point is the same: the court relied on her written professional input in adjudicating a contested request to amend the parenting plan. Once the court did so, Jacob was entitled to an evidentiary opportunity to test that input through examination at the hearing required by § 40-4-220(1), MCA.  The court could not resolve these contested parenting questions on Sterling's written submissions alone.

¶33　Heather's assertion that Sterling was only a "fact witness" is not only unsupported by the record here, but it also underscores the need for an evidentiary hearing.  Sterling's observations and assessment—as stated in unsworn "status letters"—bolstered Heather's version of the children's best interests.  Conversely, the children had not seen Sterling since October 2024, and Jacob disagreed they should see her at all.  Notwithstanding, the court

16

relied on and incorporated Sterling's assessments into its decision without hearing testimony or giving Jacob the opportunity to examine Sterling and test the basis, scope, and weight of those assessments at the hearing required by § 40-4-220(1), MCA. This was error.

¶34 Additionally, § 40-4-215(1), MCA, provides that a court "may order an investigation and report concerning parenting arrangements" by either the court-appointed GAL or other appropriate professional. The investigator's report "may be received in evidence at the hearing" and "must be included in the court record." Section 40-4-215(3), (4), MCA. The investigator must also make available all data underlying the report. Section 40-4-215(4), MCA; *see also* § 40-4-215(3), MCA (in preparing his report, the investigator may by court order "refer the child to professional personnel for diagnosis" and "may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past"). "*Any party to the proceeding may call the investigator* and any person the investigator has consulted *for cross-examination*." Section 40-4-215(4), MCA (emphasis added); *accord Jacobsen*, ¶ 32 (GALs who offer evidence in parenting determinations "must testify and be subject to cross-examination" (citing §§ 40-4-205 and -215, MCA)).

¶35 Under this statute, Jacob was likewise entitled to examine GAL Raffiani regarding his assessments and parenting recommendations, including those in his August 15, 2023 report to the court. Without an evidentiary hearing, the protections contemplated by § 40-4-215(4), MCA, could not be meaningfully exercised. We reject, however, Jacob's separate contention that the GAL's investigative results were wholly absent from the

17

record.  Raffiani's August 15, 2023 report is part of the record.  The procedural defect here is not the complete absence of any GAL material, but the District Court's decision to adjudicate a contested parenting-plan amendment without the evidentiary hearing at which the parties could test professional and investigative input through examination.

¶36    Finally, we do not reach Jacob's arguments that Sterling had a disqualifying conflict of interest based on her dual role as court-appointed counselor and advisor on parenting plan issues.  Jacob claims that under Montana's administrative rules, Sterling's working with the family in a therapeutic capacity precluded her from impartially dictating the parties' residential schedules.  Jacob says that only the GAL—who was not a therapeutic professional—could impartially evaluate parenting-plan issues and make recommendations to the court.  This issue, however, is proper subject matter for examination of these professional persons under §§ 40-4-214(2) and -215(4), MCA.  Neither Jacob nor Heather had an opportunity to test Sterling's or the GAL's professional opinions on these or any other matters because the District Court amended their parenting plan without an evidentiary hearing.  On remand, Jacob is free to challenge Sterling's qualifications and opinions at hearing.  We express no opinion on the ultimate admissibility, weight, or legal effect of Sterling's opinions or recommendations on remand; those matters are for the District Court to address in the first instance on a properly developed evidentiary record.

## CONCLUSION

¶37    We hold that the District Court abused its discretion by amending the parties' final parenting plan without holding an evidentiary hearing as required by § 40-4-220(1), MCA.

18

By not holding a hearing, the court denied Jacob the opportunity to examine professional persons, including court-appointed counselor Sterling and GAL Raffiani, pursuant to §§ 40-4-214(2) and -215(4), MCA.

¶38 We do not reach the parties' arguments regarding whether the amended parenting plan was in the children's best interests and neither comment nor opine on the court's parenting plan determination. Nothing in this Opinion should be read as expressing any view on whether the ultimate placement ordered by the District Court was substantively correct. We hold only that the court could not lawfully reach that question on this record without first conducting the hearing required by § 40-4-220(1), MCA. The April 23, 2025 Amended Final Parenting Plan was entered without the required evidentiary hearing and therefore must be vacated in its entirety.

¶39 Accordingly, we reverse the District Court's April 23, 2025 order insofar as it granted amendment of the parenting plan, vacate the April 23, 2025 Amended Final Parenting Plan in its entirety, and remand for the District Court to conduct an evidentiary hearing on the merits of the requested amendment pursuant to § 40-4-220(1), MCA. Following that hearing, the court shall enter a new decision supported by findings of fact and conclusions of law grounded in the evidence presented at hearing and consistent with §§ 40-4-219(1) and -212(1), MCA.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ JIM RICE